CASE 66—PETITION ORDINARY—JAN. 21.

# Louisville & Nashville R. R. Co. v. Kelly's Administratrix:

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

1. DAMAGES—DEATH BY WRONGFUL ACT—CONSTITUTIONAL CONSTRUCTION.—The provision of section 241 of the Kentucky Constitution that "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful acts, then in every such case, damages may be recovered for such death from the corporations and persons so causing the same," includes, not alone compensatory damages, but all varieties of damages known to the law. It was the intention of that section to extend the common law right of action to recover both compensatory and exemplary damages for injury not resulting in death, to cases in which death ensued.

2. INSTRUCTIONS—COMPENSATORY DAMAGES.—An instruction as to compensatory damages which directed the jury to find for the plaintiff "such sum as you may believe from the evidence will reasonably and fairly compensate the estate of the decedent for the destruction of his power to earn money," is proper, and under it the jury is authorized to consider all the evidence in the case, and if they were of opinion that he would have no greater earning capacity during the remainder of his life than at the time of his death, to deduct from his gross earnings during his life expectancy such reasonable expenses as might be necessary.

3. CORPORATIONS—EXAMPLARY DAMAGES.—The rule of law that exemplary damages can not be recovered against the master for the mere negligence of his servants, however gross, if the master is personally free from fault, and has maintained personal supervision over his servants, is not applicable to the case of a corporation, through the gross neglect of whose managing agents at the place of injury the damage was caused.

This rule can not be applied in cases of corporations, because they only act and speak through their servants and agents, and the act of the servant or agent, when acting within the scope of his authority, is the act of the corporation itself.

4. PRACTICE—TRIAL.—Upon the trial of an action to recover damages by a personal representative for the death of her intestate, who was also her husband, she, as a matter of right, is entitled to be present at the trial, and may be accompanied by her children or other members of her family.

5. EVIDENCE.—The court properly refused to permit the defendant to prove that the conductor and engineer through whose forgetfulness the accident occurred were members of certain orders and brotherhoods, and that if it had undertaken to discharge either of them previous to the accident without showing that they were incompetent and unfit for their positions, it would have led to a strike of the trainmen in its service, and thereby inflicted damage upon it and the public; and properly excluded evidence that the conductor and engineer were experienced men and had proven themselves competent to manage and operate trains successfully. Such evidence was irrelevant, the issue being as to the negligence of appellant and its agents in operating the train, and not its negligence in the employment or retention of its servants.

6. EVIDENCE—LIFE TABLES.—In such a case Wigglesworth's life tables may properly be introduced in evidence.

LYTTLETON COOKE FOR APPELLANT.

1. No right of action survived at common law. L. & P. Canal Co. v. Murphy, 9 Bush, 534; Givens v. K. C. Ry. Co., 89 Ky., 234.)

2. In respect to right of action. (Section 241 of the Constitution, and sections 1 and 3, of chapter 57, of the General. Statutes.)

3. Reduction of power to earn money does not apply in actions for death. L., C. & L. R. R. Co. v. Case's Adm'r, 9 Bush, 736; Muldraugh's Hill, etc., Turnpike Co. v. Maupin, 79 Ky., 105; K. C. Ry. Co. v. Ackley, 87 Ky., 283.)

4. Exemplary damages not recoverable against master for mere negligence of servant, if master not in fault. (Shearman & Redfield on Negligence, sec. 749; 5 Amer. & Eng. Enc. of Law, pages 2 to 23 inclusive.)

5. Only compensatory damages can be recovered under section 1, chapter 57, of the General Statutes. (L., C. & L. R. R. v. Case's Adm'r, 9 Bush, 737; Givens v. K. C. Ry. Co., 89 Ky., 234; C., N. O. & T. P. R. R. Co. v. Privitt's Adm'r, 92 Ky., 223.)

6. That gross neglect signifies a less degree of neglect than willful neglect. (City of Lexington v. Lewis, 10 Bush, 677; Handsford's

Louisville & Nashville R. R. Co. v. Kelly's Administratrix.

Adm'r v. Payne, 11 Bush, 380; Bransom's Adm'r v. Labrot, 81 Ky., 641; Hackett v. L., St. L. & T. Ry. Co., 15 Ky. Law Rep., 613; L. & N. R. R. Co. v. Coniff's Adm'r., 16 Ky. Law Rep., 299.)

7. The degree of negligence alleged determines whether action is instituted under section 1 or section 3 of chapter 57 of General Statutes. (Henderson's Adm'r v. K. C. Ry. Co., 86 Ky., 389; Jordan's Adm'r v. C., N. O. & T. P. R. R. Co., 89 Ky., 40; Baker's Adm'r v. L. & N. R. R. Co., 13 Ky. Law Rep., 465; Hackett v. L., St. L. & T. Ry. Co., 15 Ky. Law Rep., 612.)

8. In respect to measure of damages to decedent's estate. (Sutherland on Damages, Vol. 3, 282; Sedgwick on Measure of Damages, Vol. 2, 535; Pierce on Railroads, 393; Whitford v. Panama R. R. Co., 23 N. Y., 465; Blake v. Midland R. R. Co., 10 English Law and Equity Reports, 443; and 18 Q. B., 93; Houston, etc., R. R. Co. v. Cowser, 57 Texas, 393; McAdory v. L. & N. R. R. Co., 10 Southern Reporter, 507; James v. R. & D. R. R. Co., 9 Southern Reporter, 335; 26 Ga., 259; 4 Gill, 406; 8 Gray, 45; 66 N. C., 154; Stand. Oil Co. v. Tierney, 92 Ky., 377; C., N. O. & T. P. R. R. Co. v. Sampson's Adm'r, 16 Ky. Law Rep. 819.)

9. In respect to intention of master in determining liability for act of servant, etc. (Bowler v. Lane, 3 Met., 311; Lou. & Port. R. R. Co. v. Smith, 2 Duvall, 556; Parker v. Jenkins, 3 Bush, 587; L. & N. R. R. Co. v. McEwan, 31 S. W. Rep., 465, and 16 Ky. Law Reporter; Shearman & Redfield on Negligence, sec. 749.)

10. Juries should not be left to assess damages by guess-work. (Shearman & Redfield on Negligence, section 740; Pierce on Railroads, 395; Erie Iron Works v. Barber, 102 Penn. St., 156; L. S. R. R. Co. v. Minogue, 90 Ky., 375.)

11. In respect to admissibility of life-tables as evidence. (City of Friend v. Ingersoll, 58 N. W. Reporter, 281.)

12. In respect to "damages" and "punitive damages." (Sutherland on Damages. vol. 1, chapter 1, p. 1, and vol. 1, chapter 9, p. 717; Anderson's Dictionary of Law, p. 305; Fay v. Parker, 53 N. H., 342; L. & N. R. R. v. Trammell, 9 Southern Reporter, 870; Rose v. Des Moines, etc., R. R. Co., 39 Iowa, 355; C., etc., R. R. Co. v. Bayfield, 37 Michigan, 205; Telfer v. Northern R. R. Co., 30 N. J. Law Reports (1 Vroom, 188.); St. L., etc., R. R. Co. v. Farr, 56 Federal Reporter, 994; Houston, etc., R. R. Co. v. Willie, 53 Texas, and 5 Amer. and Eng. R. R. Cases, 541; St. L., etc., R. R. Co. v. Robbins, 21 S. W. Rep., 886 (57 Ark., 377.)

13. Reversible error to permit proof of the number of family dependent upon person killed or injured. (Patterson on Railway Accident Law, 372; Thompson on Negligence, 1263; Penn. R. R. Co. v. Roy, 102 U. S., 460; Rorer on Railroads, 1099; Sedgwick on Measure of Damages, 7th edition, vol. 1, 641; Pitts., etc., R. R.

Louisville & Nashville R. R. Co. v. Kelly's Administratrix.

Co. v. Powers, 74 Ill., 343; City of Chicago v. O'Brennan, 65 Ill., 163; Stephens v. Hannibal, etc., R. R. Co., 9 S. W. Rep., 591; Beems v. Chicago, etc., R. R. Co., 36 Iowa, 363, and 6 Amer. and Eng.R. R. Cases, 227; 41 N. H., 358; 119 Ill., 89; 4 Gray, 333; 39 Conn., 552; 50 Barbour, 628; 48 Ala., 566; Standard Oil Co. v. Tierney, 92 Ky., 377; C., N. O. & T. P. R. R. Co. v. Sampson's Adm'r., 16 Ky. Law Rep., 819.)

MATT O'DOHERTY FOR APPELLEE

1. The word "damages" as used in section 241 of the Kentucky Constitution does not mean compensatory damages merely. The object of that section was to extend the right of action for injuries not resulting in death, to cases where death resulted, with all its incident rights as fixed by the law of this State, including the right to exemplary damages where the negligence complained of was gross. (Shearman & Redfield on Neg., sec. 16; Muldraugh Hill Co. v. Maupin, 78 Ky., 103; Maysville, &c., R. R. Co. v. Herrick, 13 Bush, 127; N. N. & M. V. Co. v. Dentzel, 12 Ky. L.R., 626; Chiles v. Drake, 2 Met., 146; Code of Alabama, sec. 2589; R. & D. R. R. Co. v. Freeman, 97 Ala., 292; Code of Tenn., sec. 2291; Harley v. M. & O. R. R. Co., 7 Baxter (Tenn.), 243.)

2. But the damages awarded in this case are purely compensatory. The whole amount awarded placed at interest will yield, after the deduction of taxes, just about the wages the decedent was earning at the time of his death.

3. The instruction as to the measure of compensatory damages is correct. (L. C. & L. R. R. Co. v. Case's Adm'r, 9 Bush, 737.) But if it was not, appellant having asked for substantially the same instruction on that point, could not be heard to complain of the error. (Cleft v. Stockton, 4 Litt., 217; Chambers v. Wilkins, 4 Litt., 147; Outer v. Grested, 4 J. J. M., 610.)

4. The undisputed facts in this case show willful neglect, and it is therefore immaterial what instructions were given on the subject of gross negligence, or whether gross negligence authorizes exemplary damages.

5. The rule that no exemplary damages can be recovered in an action against the master, for the acts of his servant, no matter how gross the negligence, if the master be personally free from fault, has no application to corporations which can only act through their agents and servants. (Bass v. R. R. Co., 36 Wis., 423; Sutherland on Damages, Vol. 1, pp. 750 and 758; Goddard v. Grand, 57 Me., 202; Hanson v. E. & N. A. R. R. Co., 62 Me., 84; Shearman & Redfield on Negligence, 4th ed., sec. 749; Harris on Damages by Corporations, Vol. 1, p. 296-7, sec. 249; Redfield on Railways, 3d Ed., 510.)

6. The life tables were competent evidence. (Mahoney's Adm'r v. L.
C. & L. R. R., 7 Bush, 238; Greer v. L. & N. R. R., 14 Ky. L. R.,
879; Amer. & Eng. Enc. of Law, Vol. 5, p. 67.)

R. C. DAVIS OF COUNSEL ON SAME SIDE.

LYTTLETON COOKE IN PETITION FOR REHEARING.

1. The word "damages" as used in section 241 of the Constitution of
Kentucky does not in itself mean or include punitive or exemplary
damages. "Damages" as used in its ordinary sense contemplates
compensation only. (Webster's Dictionary; Worcester's Diction-
ary; Bouvier's Law Dictionary, Vol. 1, 14th Ed., p. 426; Ander-
son's Dictionary of Law, p. 305; Sedgwick on Measure of Damages,
7th Ed., Vol. 1, p. 34; Sutherland on Damages, Vol. 1, p. 3; Field
on Law of Damages, p. 2; Amer. & Eng. Enc. of Law, Vol. 5,
title, "Damages," pp. 2 and 21.)

2. Where a master, even if a corporation, has exercised due care and
caution in the employment of competent agents or servants, he
(or it) can not be held liable for exemplary damages on account
of the willful or malicious torts of such agents or servants, un-
less they are ratified and confirmed. (Cleghorn v. R. R. Co., 54
N. Y., 44; Shearman & Redfield on Negligence, 4th Ed., sec. 748;
Railroad Co. v. Prentice, 147 U. S., 101; 3 Wheaton, 546.)

C. P. CHENAULT, IN PETITION FOR REHEARING.

1. The proper measure of compensatory damages is the pecuniary
loss suffered by the parties entitled to the sum to be recovered,
without "*solatium*" for distress of mind, and the loss is what de-
ceased would properly have earned by his intellectual or bodily
labor, during the residue of his life, taking into consideration his
age, ability and disposition to labor, and his habits of living and
expenditures. (Penn. R. R. Co. v. Butler, 57 Pa., 335.)

2. There was no foundation for the instruction as to exemplary dam-
ages. If the action is one under sec. 1, chapter 57, of the General
Statutes, the instruction was erroneous, because under that sec-
tion only compensatory damages can be recovered. (Railroad Co.
v. Case, 9 Bush, 737; Givens v. Railroad Co., 89 Ky., 234.)

If it is under sec. 3 of chapter 57 in order to recover punitive
damages, willful negligence must be alleged and proved (9
Bush, 732), and that has not been done in this case. And section
241 of the Constitution furnishes no basis for the instruction, be-
cause the "damages" therein means only compensatory damages.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT:

The appellee, Mary Kelly, sought to recover of appellant, $30,000 on account of the loss of the life of her husband and intestate, James Kelly, who was an express messenger on one of appellant's trains.

Appellee alleged in her petition that James Kelly was an employe in the service of the Adams Express Company, and while in the service of said company and traveling in a car belonging to it, forming a part of a certain train which was being run and operated by the appellant over the lines of its railroad, the defendant, its agents and servants, did, by and through their gross negligence and wrongful acts, cause said train to collide with another of said defendant's trains on its line of railroad with great force and violence, whereby, through the gross negligence and wrongful acts of defendant and its said agents and servants, the life of said James Kelly was then lost and destroyed, to the appellee's damage in the sum of $30,000.

The jury, upon the instructions of the trial court, returned a verdict against appellant for $12,500, upon which judgment was entered. To reverse that judgment this appeal is prosecuted.

The statements of the answer as to the circumstances under which Kelly's life was lost are substantially in accordance with the evidence in the case. The answer is as follows: "The defendant, the Louisville & Nashville R. R. Co. for answer to the plaintiff's petition, admits that on and prior to the 28th day of September, 1893, the plaintiff's intestate, James Kelly,

was an employe in the service of the Adams Express Co., and while in the service of the said express company, and while traveling in a certain car, forming at the time a part of a certain train, to-wit, train No. 23, which was being run and operated by the servants of this defendant over its railroad, said train did collide, at a point near and south of Hazel Patch, in Laurel county, Ky., with another train of defendant, to-wit, train No. 30, and which was coming north, on its said line of railroad, and that the life of the said James Kelly was then and there lost or destroyed.

."Defendant further says that the engines and cars constituting each of said trains were in good order and condition, as were also its roadbed and track; and that its agents and servants were well-tried men, and fully competent to fill their respective positions on and to discharge their respective duties in the conduct, management and operation of said trains.

"Defendant further says, however, that when its train No. 23, on which the said James Kelly was employed, and on which he was traveling as aforesaid, reached the town of Livingston, which is a station on its said railroad about six or seven miles north of Hazel Patch, the conductor and engineer of said train each received a written order from its agent (who was duly authorized to issue said order) to meet and pass at Hazel Patch the train with which the train they were in charge of collided; but that instead of obeying said order by stopping train No. 23 which they were in charge of, and waiting at Hazel Patch until the other

train, to-wit, No. 30, arrived at that place, they forgot said order and ran the train they were in charge of by and south of said station of Hazel Patch, and thereby brought about the collision by which the said James Kelly lost his life.

"Defendant says that in selecting and employing said conductor and engineer, who were in charge of said train No. 23, and whose forgetfulness of orders brought about the collision, it took every care and used every precaution within its power to select and employ men who were thoroughly competent and reliable in every respect; that the conductor and engineer of said train had each been in its service for many years, and had proven themselves fully competent in every respect to manage and operate said train successfully, but through some unaccountable lapse of memory on their part they each forgot said order, and instead of stopping said train No. 23 at Hazel Patch, to there meet and pass train No. 30, with which it collided, they ran the said train No. 23 beyond and south of said Hazel Patch, and thus brought about the collision between the two trains as aforesaid, and thereby caused great loss to and inflicted great damage upon this defendant.

"Wherefore, defendant says that while it admits that said collision was caused or brought about by the forgetfulness or negligence of its servants who were in charge of and operating its said train No. 23, it denies that it has been guilty of any gross or willful negligence whereby the life of plaintiff's intestate was lost

.or destroyed, and denies that the plaintiff has been damaged in the sum of thirty thousand dollars, or in any other sum exceeding—— —— dollars."

The accident occurred on September 28, 1893, after the adoption of the new Constitution but before the adoption of section 6, chapter 1, of the Kentucky Statutes. No common-law action survived to the personal representative of the deceased. (Givens v. K. C. Ry. Co. 89 Ky., 234.)

The only law under which this action could be maintained was, therefore, to be found in section 241 of the present Constitution, and in sections 1 and 3 of chapter 57 of the General Statutes.

Section 241 of the present Constitution is as follows: "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then in every such case damages may be recovered for such death from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made the same shall form part of the personal estate of the deceased person."

Sections 1 and 3 of chapter 57 of the General Statutes are as follows:

"Sec. 1. If the life of any person not in the employment of a railroad company shall be lost in this Commonwealth by reason of the negligence or carelessness

of the proprietor or proprietors of any railroad, or by the unfitness or negligence or carelessness of their servants or agents, the personal representative of the person whose life is so lost may institute suit and recover damages in the same manner that the person himself might have done for any injury where death did not ensue. (a.)"

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Sec. 3. If the life of any person or persons is lost or destroyed by the willful neglect of another person or persons, company or companies, corporation or corporations, their agents or servants, then the widow, heir or personal representative of the deceased shall have the right to sue such person or persons, company or companies, corporation or corporations, and recover punitive damages for the loss or destruction of the life aforesaid. (a.)"

These sections have been held not to be repealed by section 241 of the Constitution, in so far as the right of the widow to bring an action in her own name for willful negligence, causing the death of her husband, was concerned (Edmonson v. K. C. R. R. Co., 16 Ky. Law Rep., 459), and in so far as was concerned the right of the widow and children of the deceased to the share of the recovery given them by chapter 57 of the General Statutes. (Wright v. Wood's adm'r, 16 Ky. Law Rep., 337.)

In the case last referred to, in an opinion by Judge Lewis, the conclusion was practically reached that, except in the provision of section 241 of the Constitu-

tion, the "General Assembly may provide how the recovery shall go and to whom belong, and until such provision is made the same shall form part of the personal estate of the deceased person." There was not even a seeming inconsistency between the statute and the Constitution, but that section 241 could be fairly interpreted as giving cumulative or additional power, right or remedy in addition to the power, right or remedy given by chapter 57. The court said in that case: "There being no express declaration by those who framed the Constitution to thereby repeal section 3, chapter 57, General Statutes, section 241 can not, according to a well-settled rule of construction, be regarded as having so operated unless there is absolute inconsistency between the two. (Peyton v. Mosley, 3 Mo., 80; City of Henderson v. Lambert, 8 Bush, 607; Courtney v. Louisville, 12 Bush, 419.)

"And though they may be seemingly incompatible or contradictory, still if they can be both enforced the latter will not be held to repeal the former unless there is reason to conclude it was so intended. (E. & P. R. R. Co. v. Trustees of Elizabethtown, 12 Bush, 233.)

"On the contrary, if section 241 can be fairly interpreted as merely giving cumulative or additional power, right or remedy, it is not, in meaning of the Constitution, inconsistent with section 3, chapter 57, General Statutes, and both may be upheld. (Gorham v. Luckett, 6 B. M., 146.)"

The court there decided that the adoption of section 241 of the Constitution did not take away from the

widow and children of a person killed by willful neg-
ligence the preference that already existed under sec-
tion 3, chapter 57, General Statutes.   But the petition
in this case was evidently drawn, and so conceded by
counsel, under section 241 of the new Constitution,
and it will be considered from that standpoint.   It
will, therefore, be unnecessary to consider the ques-
tion whether, by the denial in the answer of willful
negligence on the part of the appellant, the defective
averments of the petition, supposing it to have been
drawn under section 3 of chapter 57 of the General
Statutes, were cured, and an issue made under that
section upon the question of willful negligence.

It is very earnestly and with great ingenuity con-
tended by counsel for appellant that section 241 pro-
vides merely for compensatory damages, and that it
was error to instruct the jury that they might give ex-
emplary damages if they found appellant had been
guilty of gross neglect.

This contention is based upon a construction of the
language "damages may be recovered for such death,"
limiting the word "damages" to pure compensation,
and appellant relies very much upon various defini-
tions which he cites of the word damages.   These
definitions do not, however, fully sustain his conten-
tion, for in many of them no rule is given for the esti-
mation of damages, and in several of them the idea is
expressed of satisfaction for a wrong or injury.

Worcester defines the word as "the indemnity or pe-
cuniary satisfaction awarded for an injury."   Defini-

tions of this class would clearly include all kinds of damages which might be awarded for an injury, and we think, as used in section 241 of the Constitution,. the word is used in its broadest sense, and includes all varieties of damages known to law.   No limitation is put upon it, so far as we have been able to find, in any other part of the Constitution.   In other words, we are of opinion that the convention intended to extend the common law right of action to recover both compensatory and exemplary damages for injuries not resulting in death to cases in which death ensued, and a very forcible argument in favor of this construction is found in section 54 of the Constitution, where it is provided that "the general assembly shall have no power to limit the amount to be recovered for injuries resulting in death or for injuries to person or property."

It seems evident that this denial of power to the Legislature to limit the amount of recovery would hardly have been inserted if the intent of section 241 was to place a limit upon the amount of recovery.

It is well settled in this State that for injuries not resulting in death exemplary damages could be recovered where the negligence causing the injury was gross.   "The civil law affirms the existence of three degrees of negligence—slight, ordinary and gross. The distinction between these degrees of negligence has been repeatedly recognized in the courts of common law, *   *   * the term negligence including all. its grades."   (Sherman & Redfield on Negligence, section 16.)

"This is a common-law proceeding to recover damages for a personal injury not resulting in death, and punitive damages were recoverable if the proof showed that the company failed to use such diligence in keeping its railroad bridge in repair as careless and inattentive persons usually exercise in the prosecution of business of like character. The absence of slight care in the management of a railroad train is gross negligence." (Maysville R. R. v. Herrick, 13 Bush, 127; N. N. & M. V. R. R. v. Dentzel, 12 Ky. Law Rep., 626.)

In this conclusion we are confirmed by the opinion in L., C. & L. R. R. Co. v. Case's adm'r, 9 Bush, 737, passing upon sections 1 and 3 of chapter 57 of the General Statutes. Section 1 gave a right of action only where the death of a person not in the employment of a railroad company was caused by the negligence of the owners, their agents, etc. Section 3 gave a right of action for the loss of life by willful neglect, a statutory variety of negligence not known to the common law, and provided that the widow, heir or personal representative of the deceased person shall have the right to sue and recover punitive damages.

We thus find the first section providing for the recovery of damages, and the third providing for the recovery of punitive damages, from which it was plain that the Legislature did not use the word "damages" in the first section in its unqualified meaning so to include punitive damages as provided for in the third section; and the court said: "Considering the entire act, it seems to us that punitive damages are allowable only in cases of willful neglect."

Appellant's contention is, to some extent, based upon the theory that what are called "exemplary damages" are not awarded as compensation to the injured party, but as a punishment to the wrongdoer.

This court in the case of Chiles v. Drake, 2 Met., 146, decided otherwise.      The contention was there made that as under the Constitution no one could be punished twice for the same offense, only compensatory damages could be recovered where the act causing the injury was also punishable under the penal law.      This court in that case said:      "This argument is evidently based on a misconception of the meaning of the expression punitive damages contained in the act.·

"The act authorizes a recovery of punitive damages for the injury sued for.      The plaintiff is authorized to recover damages for the injury sustained, and those damages are to be vindictive, or, in other words, they are to be punitive.      The recovery is for the loss sustained, but the damages to be allowed therefor are to be exemplary.      This is the sense in which the word 'punitive' has been frequently used by this court, and it is evidently the sense in which it was used by the Legislature.      Punitive, vindictive and exemplary damages are all synonymous terms.

"It will hardly be contended that a plaintiff can not recover vindictive damages in an action for an assault and battery, committed with circumstances of aggravation, although the defendant might be indicted for the same offense.      The recovery in one case is for private injury, and in the other the punishment is inflict-

ed for public wrong. Vindictive damages operate, it is true, by way of punishment, but they are allowed as compensatory for the private injury complained of in the action. They are allowed because the injury has been increased by the manner it was inflicted. * * *

"Every recovery for a personal injury, with or without vindictive damages, operates in some degree as a punishment, but it is a punishment which results from the redress of a private wrong, and does not, therefore, violate either the meaning or spirit of the Constitution."

It is further argued that the General Assembly, when in pursuance of section 241 it adopted section 6, chapter 1 of the Kentucky Statutes, gave a legislative construction of that section of the Constitution by inserting in section 6 the words, "and when the act is willful or the negligence is gross punitive damages may be recovered."

The act was passed in pursuance of the constitutional provision, and we do not think that the Legislature thereby intended to do anything except declare the meaning of the constitutional provision and make provision as permitted by that section as to how the recovery should go and to whom it should belong.

The instructions given were as follows:

"Gentlemen of the Jury:—It will be your duty in this case to find for the plaintiff in such sum as you may believe from the evidence will reasonably and fairly compensate the estate of James Kelly for the destruction of the power of James Kelly to earn

money, and if you shall find from the evidence that the death of James Kelly was caused by the gross negligence of the defendant, its agents or employes, then you may, in your discretion, find in favor of the plaintiff such a further sum as punitive or exemplary damages as you may believe from all the evidence that you have heard in the case is right and proper, not exceeding, however, in all the sum of thirty thousand dollars, the amount claimed in the petition."

"By gross negligence is meant the failure to observe slight care."

It is urged that the instructions were erroneous in fixing compensatory damages to be recovered by appellee, in that the jury was instructed to award such sum as would reasonably and fairly compensate the estate of James Kelly for the destruction of the power of James Kelly to earn money, and in that this instruction commanded the jury to take as the measure of damages the gross annual earnings of the intestate for the full period of his expectation of life.

We do not think this objection well taken.   The jury were instructed to compensate his estate for the destruction of his power to earn money, under all the evidence in the case.   This would have authorized them, had they assumed that appellee's intestate would remain during the balance of his life in the same employment and at no higher wages than he was then receiving, to deduct from his gross earnings during his life expectancy such expenses as he might incur when absent from home and his living expenses; but

we do not think that the jury were required to assume
that a young man of twenty-eight, in excellent health,
would necessarily have no increase at any time during
his life in his earning capacity.   But we do not think
these views should have been embodied in an instruc-
tion.

It has been recently held by this court that the rule
contended for by appellant was not law in Kentucky.

In the case of the Chesapeake & Ohio R. R. Co. v.
Lang's Admr. ante, 221, it was contended that the jury
should have been instructed to award the probable
net earnings of the deceased, to be ascertained by
deducting from the gross amount the cost of his living.
Said the court in that case:   "This measure of dam-
ages has been adopted by some of the courts of this
country, but has never been followed by this court.
The loss sustained is the power of the intes-
tate to earn money, etc., and if the rule contended
for is sustained, then it follows that the representative
of one who has been wrongfully or negligently killed
can recover no compensation if his necessary or rea-
sonable expenditures exceed his earnings and the
value of human life made to depend upon the money
the injured party could have made.

"One so young as not to be able to labor could re-
cover nothing if, as contended by the appellant, his
ability or rather power to earn money at the time of
his death is alone to be considered.

"This young man at the time of the accident was
eighteen years of age earning as much as one dollar

per day, with, according to the mortality tables, the probability of living many years. * * * This court has always approved instructions as to the measure of damages that authorized the jury to consider the age of the intestate, his capacity to earn money and the probable duration of his life.    The entire question, without any other specific instruction on the subject of the power to earn money was left to the jury, with results that are less harmful to the wrongdoer, and we think more satisfactory to the court than the rule contended for by learned counsel.    While the question as to the measure of damages has been often made before this court, there is only one case (outside of the general instruction as to compensation) in which it has been decided, and that is the Louisville & Nashville R. R. Co. v. Morris, 14 Ky. Law Rep., 466.    The court there declined to require the jury to deduct the living expenses of the deceased, as it would be 'embarking upon a sea of speculation almost without limit.'    We are not disposed to modify or vary the rule in regard to the measure of damages so long adopted by this court, and must, therefore, affirm the judgment."

Nor do we think, even if the jury had by the instructions been limited to the giving of compensation for the destruction of Kelly's power to earn money, that the verdict in this case would necessarily be set aside as excessive.

It may be remarked in reference to the objection urged to that part of the instruction No. 1, which relates to compensatory damages, that instructions were

offered by appellant directing the jury to find compensatory damages, and defining such damages as "the value of the power of the decedent to earn money had he not been killed."

In Louisville & Nashville R. R. Co. v. Graham's adm'r, 17 Ky. Law Rep., 1232, this court held that there was no difference between the effect of the phrase used in the instruction offered by appellant and the effect of the phrase used in the instruction given, namely, such sum, as "will reasonably and fairly compensate the estate of James Kelly for the destruction of the power of James Kelly to earn money." Appellant can not, therefore, complain of the giving of that part of the instruction.

It is further contended on behalf of appellant that no exemplary damages can be recovered in an action against a corporation when the corporation was in nowise responsible for the act.

It is admitted in the authorities cited on this question by appellant that there is a conflict of authority, but the general rule, as laid down in Sherman & Redfield on the Law of Negligence, section 749, is relied on. The rule is there stated as follows: "In general it may be said that exemplary damages can not be allowed against a master for the mere negligence of his servants, however gross, if he is personally free from fault and has maintained personal supervision over them."

But we do not think the rule thus laid down is applicable to the case of a corporation, through the gross

neglect of whose managing agents at the place of the injury the damage was caused.

Mr. Sutherland lays down the rule that if a servant commits a tort in his master's service, in the exercise of his employment or agency, it is deemed, at least for the purpose of compensation for an injury, as the act and tort of the master.  He says, further (side page 750):   "The same doctrine applies where a corporation is the principal, and the employment, in the course of which the servant commits the tort, is within the scope of the corporate powers.   In their appropriate sphere corporations incur liability under the same conditions as private persons; they may thus be guilty of assault and battery, slander and libel, malicious prosecution, false imprisonment and fraud.   *   *   *  (751) There is a legal unity of principal and agent as well in respect to the tortious as the rightful acts of the latter, done in the course of his employment. This identity of master and servant involves the necessary consequence that the master is responsible in damages for the wrongful acts of the servant done within the scope of his employment to the extent of full compensation; but there is some division of judicial opinion as to the basis of the master's liability for exemplary damages."

And what seems to us the better doctrine, as applied to corporations is laid down in Harris on Damages by Corporations, volume 1, pages 296-7, section 249.   Also Redfield on Railways, third edition, 510; and Bass v. R. R. Co., 36 Wis., 423.

*"Doctrine of Exemplary Damages as applied to Corporations.*

"The doubt which has existed heretofore of the liability of a corporation to exemplary damages, the same as a private individual, it does seem should be dispelled when we consider their manner of transacting their business. It has been held that while the general doctrine governing the relations of master and servant prevails, yet the master is not liable in vindictive or exemplary damages resulting from the acts of the servant; the mistake, it seems, has occurred by the misapplication of the rule. The doctrine, as laid down by Metcalf, Jr., to be true and correct, that the 'act of the servant is not the act of the master, either in legal intendment or effect, unless the master personally directs or subsequently adopts it,' may be true as an abstract principle of law governing the general relations of master and servant, but when the rule is to be applied to corporations there is an obvious difference.

The courts have deemed it proper to apply the rule governing master and servant to this class of cases. In that class of cases there are two persons, the master and the servant. It is different in the case of corporation; whether it be public, municipal or private, it is that invisible, intangible, and artificial person created by law and made *sui juris;* it is composed of officers, agents and servants. They are the corporation; without them there is no corporation. They are the head, the brains, the mouth, the tongue and the hands of it;

it thinks, speaks and acts by and through them, and in
no other way, and by no other means.   The body-cor-
porate or politic is composed of these members as one
whole, not merely invisible, but indivisible; then the
act of one is the act of the body-corporate, the act of
all, if acting at the time within the scope of the cor-
porate powers.   If a person becomes a wrongdoer by
the improper use of his tongue or his hands, the whole
body is liable and answerable therefor.     Its active
members are the component parts of the body, each to
perform its appropriate function.   Then if the act of
one is the act of the corporation, the rule or measure
of exemplary damages, in a proper case, must apply to
a corporation with all the force that it applies to a
natural person under like circumstances.   Where is
a reason for such immunity as exempts a corporation
from the severest measure of damages?"

Another objection urged by appellant is that the
court overruled appellant's motion, made before the
jury was empaneled and before trial was commenced,
to have the children of the appellee and her intestate
removed from the court room and kept out of same
during the trial, the children being infants of tender
years.   This objection is based upon a number of cases
in which it was held that it is reversible error to admit
testimony in such cases informing the jury that the
plaintiff had infant children dependant upon him for
support, and that consequently those injuries involved
the comfort of his family.

Waiving the question of whether the action of the

court before the jury was empaneled, and before the trial was commenced, can constitute a reversible error, we are clearly of opinion that the appellee, as matter of right, was entitled to be present during the trial of her case, and that she might be accompanied by her children or other members of her family. Evidence offered by appellee to show that her intestate left children was properly excluded by the trial court.

A further contention on behalf of appellant is that the trial court erred, greatly to the prejudice of the appellant, in refusing to permit it to introduce evidence to show the fact that the conductor and engineer, through whose forgetfulness the accident occurred, were members of certain orders and brotherhoods of conductors and engineers, and that if appellant had undertaken to discharge either of them from its employ previous to the accident without being able to show that they were incompetent or unfit for their positions it would have led to a strike of the trainmen in its service and inflicted damage upon appellant and upon the public at large.

We see no error in the exclusion of this testimony, nor in the exclusion of evidence that the conductor and engineer were experienced men and had proven themselves fully competent in every respect to manage and operate said train successfully. We do not think such evidence was relevant to any issue in the case. The appellee's right of action was based upon the negligence of appellant and its agents in operating the train; and no charge was made of negligence in the

employment or retention of the agents in charge of the train.

A further objection urged is that the court permitted appellee to introduce Wigglesworth's life tables, as published in volume 3, page 12, of Bush's Reports.

As shown in the case of Chesapeake & Ohio R. R. Co. v. Lang's adm'r, *supra*, "this court has always approved instructions as to the measure of damages that authorized the jury to consider the age of the intestate, his capacity to earn money, and the probable duration of his life," and has frequently decided that these tables were competent evidence. · (Mahoney's adm'r v. L., C. & L. R. R. Co., 7 Bush, 238; Greer v. L. & N. R. R. Co., 14 Ky. Law Rep., 879; also Am. & Eng. Enc. of Law, volume 5, page 67.)

Nor is the fact that they were permitted to be introduced after the testimony had been closed on both sides and the witnesses discharged error to the prejudice of appellant, as it is not anywhere shown that appellant had witnesses by whom to contradict or explain this evidence, and the trial court would have doubtless granted it time had application been made to obtain such witnesses.

Wherefore, the judgment must be affirmed, with damages.

On May 1, 1897, the court delivered the following response to the petitions for rehearing:

In response to the complaint of appellant that the case was not heard or considered by the full bench,

but only by one division thereof, it may be said that as a matter of fact the case was considered by all members of the court in the consultation room, although the oral argument was heard only by one division.

The other questions relied on in the petition for rehearing, and which are the same ones presented by the elaborate briefs filed on the original hearing, have been fully and on several occasions considered by the court.

The principal objection urged in the petition for rehearing is that section 241 does not authorize a recovery of punitive damages for death caused by gross negligence, but that question had been already decided by this court in the case of East Tenn. Telephone Co. v. Simm's adm'r, 99 Ky., 404.

In that case, in which recovery was sought for death caused by the "willful, gross and reckless negligence of the company," it was urged that the petition was defective in that it failed to allege that the intestate left a wife or child. That case also arose from an accident occurring during the period between the adoption of the present Constitution and the enactment of section 6 of chapter 1 of the Kentucky Statutes.

Said the court: "Without setting out the details of the proof it is sufficient to say that it conduced to show negligence in the particular mentioned, and the court, therefore, properly overruled the appellant's motion for peremptory instructions upon the conclusion of the plaintiff's proof.

After discussing the case of Wright v. Woods' adm'r, 96 Ky., 56, the opinion continues: "The provision of the Constitution (section 241) authorizes "a recovery for death resulting from negligence, including all supposed degrees of it, and was intended to abrogate the further use of the words 'willful neglect' in our law.   The present statute follows the Constitution, and nowhere uses those words, but does provide that if the 'negligence' is gross or the 'wrongful act' by which death is caused is willful, punitive damages are recoverable.   The words 'wrongful act, of the Constitution, and 'willful act' of the statute do not primarily refer to an act of negligence, which is the opposite of those terms.   The word 'gross,' when used to qualify the word 'negligence,' is a relative one, and is supposed to emphasize merely the want of due care and negligence, as 'gross' or 'ordinary,' according to the circumstances, relations and conditions under which due care is omitted to be exercised.   In this case there appears to have been no intention of conforming the petition to the old statute.   It is not a suit for 'willful neglect,' but recovery is sought for the death of the plaintiff's intestate, caused by the 'willful, gross and reckless negligence' of the company, the word 'willful' being used manifestly as the synonym of 'gross.'   The demurrer to the petition was, therefore, properly overruled."

And in the response to the petition for rehearing the court definitely settled this question as follows:   It was insisted at the original hearing by counsel for the

appellant that unless "willful neglect" had been shown no recovery for even compensatory damages could be had; that it was a case for punitive damages or nothing. This contention was based on the case of Cincinnati R. R. Co. v. Prewitt's adm'r, 92 Ky., 223, which we held in the opinion to have no bearing on the case at hand; and we said, in answer to this contention, that from our view of section 241 of the Constitution compensatory damages were recoverable in the action, and that an instruction so permitting was not erroneous. This was not intended as a restriction of the rights of the plaintiff to recover only compensatory damages, but to meet the contention of counsel that even such damages were not recoverable; nor do we think, as already indicated in the opinion, that the Constitution restricts the recovery to compensatory damages when at the common law punitive damages were recoverable.

While we are of opinion that the instruction "to find for the plaintiff in such sum as you may believe from the evidence will reasonably and fairly compensate the estate of James Kelly for the destruction of the power of James Kelly to earn money" authorized the jury to consider all the evidence in the case, and if they were of opinion that he would have no greater earning capacity during the remainder of his life than at the time of his death to deduct from his gross earnings during his life expectancy such reasonable expenses as might be necessary, we do not think that this should have been embodied in the instruction. The jury

should have been, as they were, instructed to compensate his estate for the destruction of his power to earn money under all the evidence in the case, and, while instructions calling the attention of the jury particularly to the fact that they were authorized to consider the life expectancy of the plaintiff's intestate, his power to earn money at the date of his death, and the probable duration of that power have been approved by this court, we do not think instructions upon that line should be encouraged, the instruction given in this case being, in our judgment, ample. The opinion in the case has been modified by verbal alterations in one or two respects.

The instruction given in this case has been long sanctioned by the practice in this Commonwealth. Statutes, in substance the same as those under which this instruction was originally given and approved, have been from time to time re-enacted, and, to change the settled rule of the court in this behalf after it had been acted upon and accepted by the legislative branch of the government, would be, in our opinion, judicial legislation of the most reprehensible kind.

Wherefore, the petition is overruled.

Judges Paynter and Burnam dissenting.