ILLINOIS CENTRAL RAILROAD CO. *v.* E. L. FULLER *et al.*

[63 South. 265.]

1. RAILROADS.  *Accidents at crossings.  Sufficiency of evidence.  Instant death.  Damages.  Suffering before death.  Appeal and Error.  Instructions.  Exemplary damages.  Code 1906, section 721.  Acts 1908, page 183.*
    In a suit for the death of a person killed by a running train while he was driving a wagon across the track at a private crossing, under the evidence as shown in the opinion of the court a peremptory instruction for the defendant should have been refused.

2. DAMAGES.  *Instant death.  Pain and suffering.  Code 1906, section 721.  Acts 1908, page 183.*
    Under Code 1906, section 721, as amended by Acts 1908, page 183, providing in case of death for a recovery of "such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent, and all damages of every kind to all parties interested in the suit," damages from pain and suffering would be damages to the decedent, and where deceased was instantly killed there would be no pain and suffer-

106 Miss. 5

ing to him, in a suit for his death an instruction to the jury that they might award damages for pain and suffering in such case was erroneous.

3. SAME.

Where in a suit for the death of a man seventy-four years old, who was instantly killed and whose earnings during his expectancy of life would have been two thousand dollars and whose beneficiaries were three children all of mature age, the jury awarded ten thousand dollars damages and there was no element warranting the imposition of punitive damages, it cannot be said that the giving of an instruction for the plaintiff authorizing the jury to impose damages for the pain and suffering of the deceased, was not prejudicial to the defendant.

4. DEATH. *Damages. Exemplary damages. Code* 1906, *section* 721. *Acts* 1908, *chapter* 167.

Code 1906, section 721, as amended by Acts 1908, chapter 167, which authorize the recovery of all damages of every kind to the deceased, and all damages of every kind to those who have a right to sue for such wrongful death, does not limit the recovery to pecuniary loss alone, but is broad enough to cover punitive damages, and such damages may be imposed where the testimony shows such acts or omissions on the part of the defendant, as amounts to malice, or gross negligence, or wantonness, or wilful disregard of its duty towards the deceased.

APPEAL from the circuit court of Attala county.

HON. G. A. McLEAN, Judge.

Suit by E. L. Fuller and others against the Illinois Central Railroad Company. From a judgment for plaintiff defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes, Blewett Lee* and *R. V. Fletcher,* for appellant.

It would be profitless for us to undertake to discuss at length the cases in which punitive damages are allowed. The rule which our court has adopted and which is the universal rule on this subject is well stated in 13 Cyc. 108. *I. C. R. Co.* v. *Dodd,* 53 So. 409; *Y. & M. V. R. Co.* v. *Harris,* 55 So. 967; *Godfrey* v. *Meridian Lt. Ry. Co.,* 58

So. 534; *Ry. Co.* v. *McLeod,* 78 Miss. 334.   The court erred in giving an instruction authorizing recovery for pain and suffering.

The death of Mr. Fuller was instantaneous.   Pain and suffering was not an element of damage to be considered by the jury, because there was no pain and suffering under the facts of this case.   The law under which this right of action must exist is found in section 721, Code 1906, as amended by Laws of 1908, page 183.   This is the law which gives the right of action for injury producing death.   But for this statute no suit could be maintained and under the statute the suit can be maintained for only such damages as the statute authorizes to be recovered.   This law provides that: "Whenever the death of any person shall be caused by any wrongful or negligent act, etc., as would, if death had not ensued, have entitled the party injured to damages, to maintain an action, the action shall survive to certain designated parties.   When stating what character of damage may be recovered the statute limits it to damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit."

The character of damages which may be recovered is particularly set out in this act.   First, "all damage of every kind to the decedent;" and second, "all damage of every kind to any parties interested."   The parties interested in the suit have not suffered any damage on account of pain and suffering of the deceased, and if they have the right to sue for this, they obtain it through the deceased as damage to him.   But he was killed instantly and there was, therefore, no such damage suffered by him. *R. R. Co.* v. *Pendergrast,* 69 Miss. 425; *McVey* v. *R. R. Co.,* 73 Miss. 487.   It was error for the court to instruct for any punitive damage.

Our contention in this case is that under our statute no such damage can be received where the injury results in

death.   Under the common law there could be no suit for damage when the injury resulted in death.   This rule is still in force in this state except to the extent it has been abolished by statute.   Our statute gives a right of action for injuries resulting in death, even when the death is instantaneous, but the statute fixes the character of damage which may be recovered and nothing can be sued for other than what the statute allows.   *Crudup case,* 63 Miss. 291; 13 Cyc. 106; *Hardie* v. *Y. & M. V. R. Co.,* 55 S. R. 970.

Now, to the point.   While our statute gives a right of action where death ensues from a negligent act, this right of action extends only so far as the statute expressly states, the common law is still in force except as it is expressly displaced by statute.   The statute does not allow parties suing for death to recover that character of damage which finds its basis in what is considered to be for the public good.   The statute confines those suing to such damage as happens ''to the decedent'' and such damages as happens ''to the interested parties.''   But not such damage as is allowed for the public good.   *Ita lex scripta est.*   We feel that this case is bound to be reversed.   Let counsel cite this court to one case where punitive damage has been allowed in a case of death like this.   We have not found it.

*Damage Excessive.*   We have already argued this to the court, and will not repeat the argument here.   In this case the facts show a skimpy actual damage of one thousand eight hundred dollars, or two thousand dollars.   The judgment is for ten thousand dollars.   There is no basis to rest it on.

*Luckett & Guyton,* for appellees.

The appellant complains that their first instruction should have been given.   The lower court in view of the conflict in the testimony as to whether the employees were guilty of simple negligence or gross negligence did right

in refusing their first instruction. The question of negligence or no negligence was a matter for the jury. They were the judges of that, and it would have been error for the court to have invaded the province of the jury in this case. Under the statute the burden was upon the defendant to offer credible and reasonable testimony to exonerate the company in killing the deceased, and this testimony should be of such character and weight that the jury will believe it.

The doctrine of the last clear chance, announced by Judge McLEAN, applies to this case in all of its force and effect. 100 Miss. 706. The case of *N. O. M. & C. R. R.* v. *Harrison,* reported in 61 So. 655 was not as strong a case as this, yet this court affirmed it.

As was well said in the case of *C. I. Company* v. *Stead,* 95 U. S. 161, 24 Law Ed. 403, the warning must be reasonable and timely. It cannot be such if the speed of the train is so great as to render it unavailing. *Railroad Co.* v. *Hawkins,* 82 Miss. 209; *Fuller* v. *I. C. Railroad Co.,* 56 So. 783.

Counsel in his brief lays great stress on the table of mortality and the expectancy of life, but this court pays but little attention to those rules and those tables, and they cut very little figure in trying cases of this character. The life of a parent is not measured by actual dollars or actual earning capacity, but his daughters and his sons have a right to his society and the pleasure coming from that, and that is an element of damages, and no doubt went to enlarge the verdict that the jury gave us in this case.

It is contended again that these appellees cannot recover punitive damages, even if the facts would warrant it, because the statute does not provide for it. The mere reading of the Acts of 1908 on page 183, which gives the right of action for injuries producing death, would demonstrate that the appellees were entitled to sue for punitive damages. They were entitled to all the rights and

remedies that the deceased was entitled to had he been living. If he had had a leg or arm cut off, and if the proof had warranted the infliction of punitive damages against the appellant, he would certainly be entitled to recover. That being admitted, then under the Acts of 1908, his next of kin have the same right and standing that he had. The statute says: "Taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit."

There is no proof here that the deceased was killed instantly. The proof is that he was caught on the cowcatcher and tossed up and up until he was finally thrown over the embankment and killed. It was evident from this testimony, that he was not instantly killed. He suffered pain during his horrible experience, even for a few moments and this would call for damage in this case.

In the *Crudup case,* 63 Miss. 291, the court announced the rule then existing under the statute. That statute was first incorporated into our law by the Code of 1880 and Judge CAMPBELL in ingrafting that statute in ·the Code, followed literally and substantially Lord Campbell's Act and all the states of the Union, nearly, in providing for this statute, use this Campbell act. In codifying the Code of 1892 the same act was brought forward and not until in 1898 was any change made. At that time the legislature made a marked change in the act so as to make it apply not only for damages suffered by persons who should bring the suit, but as well as to all damages suffered by the party who was killed. This marks a great change in the law. And that change has been carried on and adopted in the Code of 1906 and it has been further amended and enlarged by the act of 1908, page 183. So that the Crudup case relied on by counsel for the appellant, is not authority in this case, made so by reason of the changes above noted.

While punitive damages are not given by statute to any person suffering an injury, yet it flows as an incident to

the main action in every case calling for or warranting the infliction of exemplary damages. For illustration, a right of action is created by section 4043 of the Code of 1906 and nothing is said about punitive damages. Yet this court has in many cases permitted punitive damages to be recovered where the act made unlawful was done wantonly or recklessly. Section 4045 makes it actionable negligence to fail to ring a bell and blow the whistle on approaching a highway or crossing; and 4046 makes it actionable to make a flying, running, walking, or kicking switch within the limits of a municipality. Yet in actions based upon these statutes punitive damages though not mentioned, are recoverable. In section 4043 and 4026 the damages defined by the statute are such as are suffered by persons or property, words no broader than those used in the death by wrongful act statute. In other words the court has had frequent occasion to construe statutes authorizing the recovery of damage to persons or property and to hold under such statutes that exemplary damages are recoverable. This observation may be considered in connection also with sections 4047, 4049, 4050, and 4051.

We, therefore, respectfully ask that the judgment of the lower court be affirmed.

Argued orally by *J. N. Flowers* and *O. A. Luckett,* for appellees.

Reed, J., delivered the opinion of the court

This is the second appeal in this case. The first is shown by the report of *Fuller* v. *Illinois Central R. R. Co.* in 100 Miss. 705, 56 So. 783. Upon the first trial, after the testimony of the plaintiffs was all introduced, the court, on motion of the defendant, excluded the evidence, and granted a peremptory instruction for defendant. This court, however, decided that the peremptory instruction should not have been given in the case as then

presented. The record now before us discloses that at
the second trial the plaintiffs introduced several new
witnesses, and the defendant introduced witnesses in its
behalf. The second trial was on different facts.

On December 2, 1909, S. A. Fuller was run over and
killed by a passenger train of appellant. Appellees, his
three children, all of mature years, brought suit against
appellant for damages, and the jury awarded them ten
thousand dollars. The accident occurred about 5:30 p. m.
in the suburbs of Kosciusko, at a private crossing main-
tained by appellant, and generally used by persons walk-
ing and riding. Mr. Fuller, a man seventy-four years
of age, but still strong and in good health, was driving
a one-horse vehicle at a slow pace along the road which
crossed the railroad track; his wagon loaded with two
large wooden blocks and some vegetables. When he drew
near to the track he did not look about him, but contin-
ued facing the direction in which he was going. The
railroad runs east and west, and Mr. Fuller was facing
north. The train which killed Mr. Fuller was coming
from Durant, traveling, therefore, east, and was about
thirty minutes late. It was going downgrade at a rate of
speed of about thirty or thirty-five miles an hour. There
is a slight curve in the track about four hundred and sev-
enty-five feet from the crossing where the accident oc-
curred. It was about nine hundred and seventy feet from
the crossing to the point where the engineer whistles for
the station, and nine hundred and twenty-four feet to
where he whistles for the crossing. The headlight on the
engine was lighted; but there is testimony to the effect
that as the day was approaching dusk it did not cast its
light very far, and was of little service in showing the
objects ahead. On the south side of the crossing, and
about twenty feet from the south rail of the track, there
was a pile of crossties along the dirt road, which, to an
extent, obstructed the view of a traveler along the road
while he was passing it. It is in testimony that the whistle

was sounded at the station post.  It will be noticed that
the crossing whistling post was about forty-six feet nearer
to the crossing than the station whistling post.  At the
rate at which the train was traveling, the sounding of the
whistle at the station post would not be ended until the
train passed the crossing post.  The sounding for the sta-
tion could therefore answer for both posts.

Some of the witnesses for appellees say that they did
not hear the whistle for the station; some state that they
only heard two sharp blasts about the time the train
struck Mr. Fuller.  One witness says that he heard no
whistle until the train reached the crossing, when it blew
two short blasts, and then further on it blew ''three tol-
erably long whistles.''  The same witness testified that
he was going along the right of way of the railroad, and
was about four hundred and fifty or five hundred and
twenty-five feet from the crossing; that he looked up the
track towards the crossing, and saw Mr. Fuller in his
wagon just before he got to the crossing; and that the
train passed just then.  This witness does not testify,
however, that he saw Mr. Fuller on the track.  He said:
''I saw him just before he got to the track; he was not
far from the road;'' that there was some distance between
the horse's head and the track when he saw Mr. Fuller
in his wagon.  He also testified that he did not go down
to the place of the accident; that he was in a hurry, and
went on his way without making any inquiry into the mat-
ter; and that he did not remember whether it was fair
or cloudy weather.

The engineer testified that he was within one hundred
and eighty feet of Mr. Fuller at the time he first saw him,
and that he did everything possible to stop the train and
prevent the accident.  The train consisted of two passen-
ger coaches, a baggage car, express car, and engine and
tender, and there is no testimony of any defects in the
train or any of its parts.  It was shown by the testi-
mony that the train could not have been stopped in a

shorter distance than from eight hundred to eight hundred and fifty feet. One witness for appellees testified that he could see around the curve and into the engineer's cab at a distance of from twelve hundred feet to fourteen hundred feet. It is not shown that he made examination as to this at the same hour, 5:30 p. m., in the month of December, the time when the accident occurred. It is shown by testimony for appellees that Mr. Fuller had not reached the track when the train had gotten within about one hundred and fifty yards of the crossing.

It is in testimony that Mr. Fuller was earning by his work on his farm from three hundred to three hundred and fifty dollars per year. Counsel for appellant in their brief claim that in accordance with the table of mortality his expectancy at the age of seventy-four years would be about six and one-half years, and that therefore the amount which he could earn, if he lived out the full expectancy, would be not more than two thousand dollars.

Appellant assigns as an error the refusal by the court to give a peremptory instruction in its favor. From a full and careful consideration of all the facts presented, we believe that the case should have gone to the jury, and therefore we decide that this contention is not well taken.

Appellant claims that the court erred in giving an instruction authorizing recovery for pain and suffering. We find the following in instruction number 2 given appellees: ''Also any additional sum you may believe will compensate them for any pain or suffering that might have been sustained, if any, by the deceased at the time he was run over and killed by said railroad company.'' The evidence shows that the death of Mr. Fuller was practically instantaneous. His body was found over one hundred feet from the crossing where he was struck. It was broken and mangled, and from the severity of the blow when the train struck him, and the injuries which he received, we cannot escape the conclusion that his death

was as near instantaneous as possible. Now, our statute (section 721, Code of 1906, as amended by Laws of 1908, p. 183) authorizes the recovery of "such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent, and all damages of every kind to all parties interested in the suit." The damage from pain and suffering would be damage to the decedent. As he was killed instantly, there was no pain and suffering to him; therefore there would be no damage to him to be recovered by appellees.

In the case of *Railroad Co.* v. *Moore,* 101 Miss. 768, 58 So. 471, 39 L. R. A. (N. S.) 978, Judge McLean, delivering the opinion of the court, stated that the giving of an instruction authorizing the recovery for pain and suffering, which read, "the mental and physical suffering which he endured, if any be shown by the record," was harmless, if an error; and he added: "Looking through the entire record, and taking into consideration the amount of the verdict, we cannot say that the instruction is reversible error. The verdict was evidently right on the facts."

We find that the verdict in that case was for four thousand, five hundred dollars, and was in favor of a widow and children for the loss of a husband and father. In the present case, it is shown that the decedent, had he lived his full expectancy, would hardly have earned more than two thousand dollars. The verdict in favor of the surviving children, Mrs. Summers, fifty-two years old, Mrs. Hamack, forty-eight years old, and E. L. Fuller, between thirty-five and forty years, Mrs. Fuller having died before her husband, is for ten thousand dollars. Therefore we may conclude that there is eight thousand dollars that is for some other than actual damages, consisting of his expected earnings. The jury may have awarded this difference, or a part thereof, as damage for pain and suffering; we cannot, therefore, say in this case that the giving of the instruction had no prejudicial effect on appellant's case, and we believe it should have been refused.

Appellant contends that the court erred in granting instruction for any punitive damage; that under the Mississippi statute such damages cannot be recovered where the injury results in death. It seems to be the rule that, under statutes giving a right of action for death by wrongful act, exemplary or punitive damages cannot be recovered, unless expressly provided for in the statute. 13 Cyc. 363.

Under Lord Campbell's Act, exemplary damages are not recoverable. Statutes generally authorizing actions for wrongful death are patterned after this act. In the act it was provided that "the jury may give such damages as they think proportionate to the injury resulting from such death to the parties . . . for whom and for whose benefit such action shall be brought."

In the case of *Illinois Central Railroad Co.* v. *Crudup,* 63 Miss. 291, Judge COOPER, delivering the opinion of the court, said: "It is well settled that, under statutes giving to the next of kin actions to recover damages which they have sustained by the death of the deceased, punitive damages cannot be awarded unless expressly provided for." In that case it was decided that punitive damages would not be allowed under the Tennessee statute, which provided that the administrator of the estate of a decedent wrongfully killed by another, or the next of kin, may in right of the deceased recover damages for mental and physical suffering, loss of time, and necessary expenses.

In the case of *Railroad Co.* v. *Watly,* 69 Miss. 145, 13 So. 825, which is an action by a parent for the negligent killing of his child, Judge CAMPBELL, delivering the opinion of the court, said: "Compensation for the injury is to be measured by the value of the pecuniary interest of the father in his child. He is to be compensated for the pecuniary loss sustained, and not otherwise."

Now, we find first in the Code of 1880, section 1510, the statute of Mississippi authorizing actions for injuries

producing death; it is carried forward in the Code of
1892 as section 663.  The provision relative to damages
to be recovered is the same in both of these statutes, and
is as follows:  "In every such action the jury may give
such damages as shall be fair and just, with reference
to the injury resulting from such death to the person
suing."  This reading was changed when the statute was
brought into the Code of 1906, section 721, and shown in
the amendment thereto in Laws of 1908, p. 183.  The pro-
vision now reads:  "In such action.the party or parties
suing shall recover such damages as the jury may deter-
mine to be just, taking into consideration all of the dam-
ages of every kind to the decedent and all damages of
every kind to any and all parties interested in the suit."
It will be noted that the present provision for the recov-
ery of damages in the statute is much broader than when
the law was first enacted.  At first it only provided for
such damages resulting from the death to the person su-
ing; now the jury are authorized to award damages in
such amount as may be determined to be just, "taking
into consideration all the damages of every kind to the
decedent, and all damages of every kind to all parties in-
terested in this suit."  It seems to us that the words in
the present statement of what shall be recovered are
broad enough to include damages of every kind and na-
ture which might have been awarded to the decedent had
he lived and brought suit, and which could be given to
those persons who could bring the suit after his death.

Under the statute of Virginia, Code of 1873, chapter
145, which provides that the jury may award such dam-
ages as may seem fair and just, it was decided in the
case of *Matthews* v. *Warner*, 29 Grat. (Va.) 570, 26 Am.
Rep. 396, that exemplary damages are recoverable.

The statute of Connecticut states that "actions for.in-
jury to the person, whether the same do or do not result
in death, . . . shall survive to his executor or adminis-
trator."  Rev. St. 1849, tit. 1, section 83; Gen Stat., sec-

tion 1009; Revision of 1902, section 1094. Under this law it was decided that punitive damages could be recovered. *Murphy* v. *N. Y. R. R. Co.*, 29 Conn. 496; *Broughel* v. *So. New Eng. Tele. Co.*, 73 Conn. 614, 48 Atl. 751, 84 84 Am. St. Rep. 176.

The provision relative to the recovery of damages for wrongful death in the Constitution of Kentucky is: "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same." Section 241. It was decided that this language includes not alone compensatory damages but all varieties of damages known to the law, and that it extended the common-law right of action to recover both compensatory and exemplary damages for injury not resulting in death to cases in which death ensued. *L. & N. R. R. Co.* v. *Kelly's Adm'x*, 100 Ky. 421, 38 S. W. 852, 40 S. W. 452.

In a number of the states it has been declared by the courts that exemplary damages will not be allowed in suits for wrongful death. See *Atchison, etc., R. R. Co.* v. *Townsend*, 71 Kan. 524, 81 Pac. 205, as reported in 6 Ann. Cas. 191, and notes thereunder.

We think that reference must be had to the very words of the statute to determine whether or not punitive damages are allowed. It has been held that one test which may be applied is whether the statute limits the recovery to the pecuniary loss; in such event no damages can be awarded by way of punishment. *Hollyday* v. *Steamer David Reeves*, 5 Hughes (U. S.) 89, Fed. Cas. No. 6625.

We believe that our statute, which authorizes the recovery of all damages of every kind to the deceased, and all damages of every kind to those who have a right to sue for his wrongful death, does not limit the recovery to pecuniary loss alone, but is broad enough to cover punitive damages. We, therefore, conclude that under our

statute punitive damages may be recovered in actions for death by wrongful acts.

Counsel for appellant claim, however, that the instruction authorizing punitive damages in this case should not have been given, because there is no substantial evidence that the negligent act complained of was malicious, or wanton, or grossly negligent. We do not see that the testimony shows such acts or omissions on the part of the servants of the railroad company as amounts to malice, or gross negligence, or wantonness, or willful disregard of their duty towards the decedent.

The testimony in this case is sufficient to take the case to the jury on the question of simple negligence; but we do not find that there exists in the "case elements of intentional wrong, or negligence so gross as to show a reckless disregard of the consequences." *Railroad Co.* v. *Dodds*, 97 Miss. 865, 53 So. 409. The evidence did not warrant the submission of the question of punitive damages to the jury.

Reversed and remanded for trial as to amount of damages.                              *Reversed and remanded.*