400 S.E.2d 830

**Phyllis BELCHER and
Stephanie L. Belcher**

v.

**Sherry L. GOINS.**

**No. 19566.**

Supreme Court of Appeals of
West Virginia.

Dec. 19, 1990.

---

G. David Brumfield, Welch, for Phyllis Belcher and Stephanie L. Belcher.

Joseph M. Sanders, Jr., Sanders, Watson & White, Bluefield, for Sherry L. Goins.

McHUGH, Justice:

The primary issue presented in this case is whether this jurisdiction recognizes a child's claim for loss or impairment of parental consortium, against a tortfeasor for nonfatal, negligently inflicted injuries sustained by the parent. We believe the Circuit Court of McDowell County answered the certified questions correctly in part and incorrectly in part. While this Court herein

recognizes such a claim by a minor child, or by a handicapped child of any age who is dependent upon the injured parent, the plaintiff here was not a minor or handicapped child at the time the cause of action accrued. Accordingly, we remand this case with directions for the trial court to enter judgment for the defendant on the claim in question.

## I.

Phyllis Belcher, mother of the plaintiff, Stephanie L. Belcher, was injured when the car she was driving was negligently struck head-on by a car driven by the defendant, Sherry L. Goins. Phyllis Belcher's claim against the defendant has been settled and dismissed with prejudice.

At the time of the collision the plaintiff was over eighteen years of age but resided in her mother's home with her mother. The plaintiff was not in or near her mother's car at the time of the collision.

As a count in her amended complaint, the plaintiff sought recovery from the defendant for "loss of love, companionship, and consortium of and from her mother," for mental anguish and for nursing and household services provided by the plaintiff to her mother after her mother was injured.

The defendant moved to dismiss for failure to state a claim upon which relief may be granted. The trial court (the Circuit Court of McDowell County) denied such motion. The trial court, upon the joint application of the parties, certified the following five questions,[1] each answered in the affirmative by the trial court:

(1) Does a child have a claim for loss of consortium against a tort-feasor occasioned because of injuries to a parent?

(2) Does a child have a claim for mental anguish against a tort-feasor for negligent injuries suffered by a parent?

(3) Does a child have a claim against a tort-feasor for nursing, domestic, or household services provided by the child to a parent as a result of injuries suffered by a parent?

(4) Are the following elements included and encompassed within the broad definition of loss of consortium: mental anguish suffered by a family member as a result of an injury to another family member, loss of love, companionship, society of and from an injured family member, and provision for nursing, household or domestic services provided by a family member to another injured family member?

(5) Does a child, regardless of age, have a claim for loss of consortium against a tort-feasor as a result of injuries inflicted upon a parent[,] provided the child resides in the same household with the injured parent?

Because most of these questions are overlapping or closely related, we have combined all but the third question for purposes of our discussion. The third question will be discussed separately.[2] Limiting our holding to a minor child, and to a handicapped child who is dependent upon the injured parent, we answer each of the first four questions in the affirmative, except for the third question and the corresponding part of the fourth question relating to nursing, domestic or household services. We answer the fifth question in the negative.

## II.

### A.

Traditionally, at common law "consortium" was defined as consisting of the alliterative trio of (1) services, (2) society and (3) sexual relations, and the husband was entitled to recover damages from a tort-feasor when *one or more* of these elements of the relationship with his wife were lost or impaired due to an injury to her. For example, the Court, in syllabus point 1 of

**1.** See *W.Va.R.App.P.* 13 and *W.Va.Code,* 58–5–2 [1967] for provisions on questions certified by circuit courts of this state to this Court.

**2.** Upon receiving certified questions from a circuit court, this Court retains some flexibility in determining how and to what extent they will be answered. *State Automobile Mutual Insurance Co. v. Youler,* 183 W.Va. 556, 561 n. 5, 396 S.E.2d 737, 742 n. 5 (1990) (citing cases).

*Shreve v. Faris,* 144 W.Va. 819, 111 S.E.2d 169 (1959), listed these three possible elements of spousal consortium:

In an action for damages, the plaintiff may recover for the loss or the impairment of the services and the society of his wife and of her capacity to engage in sexual intercourse, as elements of consortium, when it appears from the evidence that such loss or impairment results from injuries to his wife which are caused by the negligence of the defendant.

*See also Black's Law Dictionary* 309 (6th ed. 1990).

■ Similarly, "parental consortium" refers to the relationship between parent and child and is the right of the child to the intangible benefits of the companionship, comfort, guidance, affection and aid of the parent. *Gail v. Clark,* 410 N.W.2d 662, 668 (Iowa 1987) (recognizing parental consortium claim under state dramshop statute). *See also Ueland v. Pengo Hydra-Pull Corp.,* 103 Wash.2d 131, 132 n. 1, 691 P.2d 190, 191 n. 1 (1984) (en banc).[3] As a leading text writer has stated, it is useful to refer to the parent-child relationship, as well as the husband-wife relationship, as constituting consortium; the important aspects of the parent-child relationship, apart from the parent's duty of pecuniary support, are the intangibles which follow from living together as a family, including the affection, society, companionship, the mutual learning and the moral support given and received. 1 H. Clark, *The Law of Domestic Relations in the United States,* § 12.1, at 651 (2d ed. 1987).

The legislature of this state has recognized the validity of a claim by family members, including minor children, for damages for loss of consortium, including mental anguish, in cases involving the wrongful death of a family member.[4] The wrongful death statute allows distribution of net damages, including noneconomic damages, to those persons named in the decedent's will, or, if there be no will, to those persons who would be the decedent's heirs or next of kin under the laws of descent and distribution. *W.Va.Code,* 55–7–6(b) [1989]. *Accord,* syl. pt. 4, *Rice v. Ryder,* 184 W.Va. 255, 400 S.E.2d 263 (1990). Net damages distributable to these family members "include ... damages for the following: (A) Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; [and] (B) compensation for reasonably expected loss of ... (ii) services, protection, care and assistance provided by the decedent[.]" *W.Va.Code,* 55–7–6(c)(1)(A) & (B)(ii) [1989].

#### B.

There is a split of authorities as to whether a minor child has a legally cognizable claim for loss or impairment of parental consortium, against a tortfeasor who negligently injures, but does not kill, the minor child's parent. Adhering to the early common-law rule, most state courts have refused to recognize such a claim. Of the approximately thirty-four states in which state appellate courts have decided the issue, about twenty-five states have refused to recognize a minor child's claim for loss or impairment of parental consortium in a nonfatal injury case.[5] The *Restatement*

---

**3.** The style of this case in the regional reporter (P.2d) is *Ueland v. Reynolds Metals Co.*

**4.** In the wrongful death context, compensatory damages awarded for loss of these intangibles are often referred to as "solatium."

**5.** Opinions of state appellate courts refusing to recognize a common-law claim for loss or impairment of parental consortium in a nonfatal injury case include the following: *Gray v. Suggs,* 292 Ark. 19, 728 S.W.2d 148 (1987); *Lewis v. Rowland,* 287 Ark. 474, 701 S.W.2d 122 (1985); *Borer v. American Airlines, Inc.,* 19 Cal.3d 441, 563 P.2d 858, 138 Cal.Rptr. 302 (1977) (en banc);

*Lee v. Colorado Department of Health,* 718 P.2d 221, 233–34 (Colo.1986) (en banc), *as modified on denial of reh'g; Hinde v. Butler,* 35 Conn. Supp. 292, 295–97, 408 A.2d 668, 670 (1979) (wrongful death action, but apparently also applicable to cases involving nonfatal physical injury to parent), *criticized on another point, Leland v. Chawla,* 39 Conn.Supp. 8, 9–13, 467 A.2d 439, 440–41 (1983); *Zorzos v. Rosen,* 467 So.2d 305 (Fla.1985) (statute passed in 1988, however, expressly authorizes recovery of damages by an "unmarried dependent" for lost or impaired parental consortium in cases involving nonfatal physical injury to parent, *see infra* note 6); *W.J.*

*(Second) of Torts* § 707A (1976) states the majority view: "One who by reason of his [or her] tortious conduct is liable to a parent for illness or other bodily harm is not liable to a minor child for resulting loss of parental support and care." This *Restatement* position pre-dated all of the minority-view cases. The initial rationale for this rule was that, for purposes of tortious interference with domestic relations, a child was viewed as being analogous to a servant of the father without any legal right to the care and assistance of the father as master. 3 W. Blackstone, *Commentaries* *142–43.

Two of the more prominent, modern reasons for the majority rule are (1) judicial inertia, that is, as with wrongful death consortium claims, courts should defer to the legislature for recognition of a claim for loss or impairment of parental consortium resulting from nonfatal physical injury to the parent; and, alternatively, (2) judicial policy or "line drawing," that is, although they need not defer to the legislature, courts should refuse to recognize such a claim because it involves a type of tort claim, specifically, one for indirect, emotional injury, which traditionally has been disfavored at common law due to the potentially broad scope or reach of the duty. Stated another way, should the tortfeasor inflicting nonfatal physical injury be liable also for consortium impairment claims of siblings, grandchildren or others who could demonstrate emotional injuries similar to those of minor children?

However, even those courts refusing to recognize a claim for loss or impairment of parental consortium in nonfatal injury cases do recognize the reality and the seriousness of the injury sustained by the mi-

*Bremer Co. v. Graham,* 169 Ga.App. 115, 312 S.E.2d 806 (1983), *cert. denied,* 252 Ga. 36, 312 S.E.2d 787 (1984); *Halberg v. Young,* 41 Haw. 634, 59 A.L.R.2d 445 (1957), *but see Masaki v. General Motors Corp.,* 71 Haw. 1, 19–22, 780 P.2d 566, 576–78 (1989) (recognizing common-law claim by parent for loss or impairment of consortium of child in a nonfatal injury case); *Van De Veire v. Sears, Roebuck & Co.,* 178 Ill.App.3d 794, 127 Ill.Dec. 912, 533 N.E.2d 994 (1989); *Barton–Malow Co. v. Wilburn,* 556 N.E.2d 324, 324–25 (Ind.1990); *Dearborn Fabricating & Engineering Corp. v. Wickham,* 551 N.E.2d 1135 (Ind.1990); *Audubon–Exira Ready Mix, Inc. v. Illinois Central Gulf R.R.,* 335 N.W.2d 148, 149–52 (Iowa 1983) (wrongful death action, but in dicta court rejected *common-law* right to parental consortium in cases involving nonfatal physical injury to parent; however, court held that under wrongful death *or injury statute,* damages for loss or impairment of parental consortium *are* recoverable by minor or adult children); *Hoffman v. Dautel,* 189 Kan. 165, 368 P.2d 57 (1962); *Kelly v. United States Fidelity & Guaranty Co.,* 353 So.2d 349, 351 (La.Ct.App.1977), *appeal dismissed as moot,* 357 So.2d 1144 (La.1978); *Durepo v. Fishman,* 533 A.2d 264 (Me.1987); *Gaver v. Harrant,* 316 Md. 17, 557 A.2d 210 (1989); *Salin v. Kloempken,* 322 N.W.2d 736 (Minn.1982); *Barbera v. Brod–Dugan Co.,* 770 S.W.2d 318, 320–22 (Mo. Ct.App.1989), *application to transfer denied* (Mo. June 13, 1989); *Versland v. Caron Transport,* 206 Mont. 313, 323–24, 671 P.2d 583, 589 (1983) (involving wrongful death, but court stated broadly that nonadopted minor *step* children have no claim for deprivation of "parental" consortium); *General Electric Co. v. Bush,* 88 Nev. 360, 368, 498 P.2d 366, 371 (1972); *Russell v. Salem Transportation Co.,* 61 N.J. 502, 295 A.2d

862 (1972); *DeAngelis v. Lutheran Medical Center,* 84 A.D.2d 17, 445 N.Y.S.2d 188 (1981), *aff'd mem.,* 58 N.Y.2d 1053, 449 N.E.2d 406, 462 N.Y.S.2d 626 (1983); *Vaughn v. Clarkson,* 324 N.C. 108, 376 S.E.2d 236 (1989) (per curiam); *Morgel v. Winger,* 290 N.W.2d 266 (N.D.1980); *Sanders v. Mt. Sinai Hospital,* 21 Ohio App.3d 249, 256–57, 487 N.E.2d 588, 596–97 (1985); *Norwest v. Presbyterian Intercommunity Hospital,* 293 Or. 543, 652 P.2d 318 (1982); *Schroeder v. Ear, Nose & Throat Associates of Lehigh Valley, Inc.,* 383 Pa.Super. 440, 442–44, 557 A.2d 21, 22, *appeal denied,* 523 Pa. 650, 567 A.2d 653 (1989); *Still v. Baptist Hospital, Inc.,* 755 S.W.2d 807 (Tenn.Ct.App.1988).

*See also* 59 Am.Jur.2d *Parent and Child* § 96 (1987) (noting the split of authorities); annotation, *Child's Right of Action for Loss of Support, Training, Parental Attention, or the Like, Against a Third Person Negligently Injuring Parent,* 11 A.L.R. 4th 549 (1982 & Supp.1990) (collecting cases representing majority and minority views).

A few of the commentators applaud the majority rule denying a claim for lost or impaired parental consortium in a nonfatal injury case. *See, e.g.,* Comment, *Should Pennsylvania Recognize a Cause of Action for Loss of Parental Consortium?,* 28 Duq.L.Rev. 697 (1990); Note, *Parental Consortium: A House Built on Sand,* 58 UMKC L.Rev. 145 (1989). These commentators believe, *inter alia,* that the extension of liability for indirect, emotional injury should be accomplished by the legislature because it can better obtain the data for weighing the competing policy considerations, such as the magnitude of the increased liability insurance costs which society would bear.

nor child. For example, the Supreme Court of Kansas acknowledged this point in *Hoffman v. Dautel*, 189 Kan. 165, 368 P.2d 57 (1962):

It is common knowledge that a parent who suffers serious physical or mental injury is unable to give his [or her] minor children the parental care, training, love and companionship in the same degree as he [or she] might have but for the injury. Hence, it is difficult for the court, on the basis of natural justice, to reach the conclusion that this type of action will not lie. Human tendencies and sympathies suggest otherwise. Normal home life for a child consists of complex incidences in which the sums constitute a nurturing environment. When the vitally important parent-child relationship is impaired and the child loses the love, guidance and close companionship of a parent, the child is deprived of something that is indeed valuable and precious. No one could seriously contend otherwise.

*Id.* at 168–69, 368 P.2d at 59.

Dean Roscoe Pound, the eminent jurisprudential scholar, as early as the year 1916, lamented the early common-law rule denying a claim for loss or impairment of parental consortium in cases involving nonfatal physical injury to the parent. Pound, *Individual Interests in the Domestic Relations*, 14 Mich.L.Rev. 177, 185–86 (1916). Since 1980, nine state courts of last resort

have recognized such a claim. These courts analogize a parental consortium claim in a nonfatal injury case to a parental consortium claim in a wrongful death case and to a spousal consortium claim in a wrongful death case or in a nonfatal injury case; in these analogous situations recovery of nonpecuniary damages is allowed, and, therefore, the claim in question should also be allowed. These courts also emphasize that the concept of *a claim for spousal consortium was judicially created* and that courts have the inherent power, and should exercise that power, to *evolve the common law* by recognizing new claims under changed societal conditions, in this context, the modern view that minor children have many of the same rights as adults, rather than being mere chattels. Furthermore, these courts recognizing the parental consortium claim respond to the fear of an ever-widening circle of liability by limiting the scope of the tortfeasor's duty to the immediate or nuclear family of the physically injured plaintiff, and then only so far as the parent/minor child (or parent/minor or handicapped child) relationship, in addition to the husband-wife relationship. Of course, the legislature subsequently may agree completely or disagree completely with the judicial recognition of a new claim; or the legislature subsequently may delineate somewhat different contours to the new claim.[6]

---

6. The following are opinions of state appellate courts recognizing a common-law claim for loss or impairment of parental consortium in a nonfatal injury case: *Hibpshman v. Prudhoe Bay Supply, Inc.*, 734 P.2d 991 (Alaska 1987) (minor children; "tortiously inflicted" injuries upon parent, even when parent is not so severely injured as to be in a vegetative state); *Villareal v. State Department of Transportation*, 160 Ariz. 474, 774 P.2d 213 (1989) (minor and adult children; parent's physical injuries must be so serious and permanently disabling as to destroy or nearly destroy parent-child relationship); *Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 508–17, 413 N.E.2d 690, 691–96 (1980) (first state court of last resort to recognize such a claim; minor children; parent "seriously" injured); *Morgan v. Lalumiere*, 22 Mass.App.Ct. 262, 269–70, 493 N.E.2d 206, 211 (*Ferriter* extended to physically or mentally handicapped adult child residing with physically injured parent and who was dependent upon parent physically, emotionally and financially), *review de-*

*nied*, 398 Mass. 1103, 497 N.E.2d 1096 (1986); *Berger v. Weber*, 411 Mich. 1, 303 N.W.2d 424 (1981) (only minor children, apparently; expressly not limited to instances of "severely" injured parents), *aff'g as modified*, 82 Mich.App. 199, 267 N.W.2d 124 (1978) (first state appellate court to recognize such a claim); *Salinas v. Fort Worth Cab & Baggage Co.*, 725 S.W.2d 701, 702–04 (Tex.1987) (apparently recognizing such claim of minor children; their father abandoned his wife and minor children after wife/mother was sexually assaulted), *but see Vaughn v. Reagan*, 784 S.W.2d 88, 90–92 (Tex. Ct.App.1989) (not viewing *Salinas* as providing "a clear-cut mandate"), *writ of error granted* (Tex. Mar. 28, 1990); *Hay v. Medical Center Hospital*, 145 Vt. 533, 496 A.2d 939 (1985) (minor children; permanently comatose parent); *Ueland v. Pengo Hydra–Pull Corp.*, 103 Wash.2d 131, 691 P.2d 190 (1984) (en banc) (expressly not limited to minor children because jury would fix appropriate damages for adult children; "tortiously injured" parent); *Theama v.*

### C.

Several reasons typically have been offered to deny recognition of a parental consortium claim in a nonfatal injury case: (1) the weight of precedent refuses to recognize such a claim; (2) courts should defer to the legislature in this area; (3) double recovery; (4) multiplicity of actions; (5) difficulty of assessing the amount of damages; (6) increased liability insurance costs; (7) adverse effect on family relations; and (8) exposure to potentially unlimited liability. Virtually all of the courts recognizing a parental consortium claim in a nonfatal injury case address these matters. This Court believes each of these reasons are unpersuasive. We address each of these points in order.

First, this Court is more concerned with the persuasiveness of precedent than with the weight of precedent. While thirteen of the twenty-two state courts of last resort which have decided this issue since 1980 have denied a claim for parental consortium in a nonfatal injury case, we are not bound by the mere weight of judicial precedent but rather by the rule which embodies the more persuasive reasoning. *Hibpshman v. Prudhoe Bay Supply, Inc.*, 734 P.2d 991, 994 n. 8 (Alaska 1987). *See also Berger v. Weber*, 82 Mich.App. 199, 208, 267 N.W.2d 124, 128 (1978) ("when the

crowd is marching in the wrong direction it is time to break ranks and strike out on our own"), *aff'd as modified*, 411 Mich. 1, 303 N.W.2d 424 (1981). As was stated by one of the courts adopting the minority view, *Hay v. Medical Center Hospital*, 145 Vt. 533, 496 A.2d 939 (1985), "[w]hether we are the first state—or the fiftieth state—to adopt a specific legal proposition, our decision inevitably will be based upon what we deem to be in the best interests of justice and of the citizens of th[is] State ... at the time the question is presented to us." *Id.* at 545, 496 A.2d at 946. Our oath is to do justice, not to perpetuate error. *Theama v. City of Kenosha*, 117 Wis.2d 508, 519, 344 N.W.2d 513, 518 (1984). This Court concludes that the analysis of those decisions which have recognized a parental consortium claim in a nonfatal injury case, *see supra* note 6, is more persuasive than the analysis of those decisions which have rejected that claim.

Second, with respect to deferral to the legislature, in addition to observing that *the analogous claim for spousal consortium was judicially created*, we echo the sentiments of the Vermont court in *Hay*:

The argument that this Court should prohibit the present claim for parental consortium from going to a jury because the issue is more appropriate for legisla-

*City of Kenosha*, 117 Wis.2d 508, 344 N.W.2d 513 (1984) (expressly limited to minor children; negligently injured parent); *Nulle v. Gillette-Campbell County Joint Powers Fire Board*, 797 P.2d 1171 (Wyo.1990) (minor children; "tortiously inflicted" injuries upon parent); *Craft v. Hermes Consolidated, Inc.*, 797 P.2d 559 (Wyo. 1990) (following *Nulle*).

Minor children or, in some instances, minor and adult children *are* entitled under *statutes* in some states to recover for lost or impaired parental consortium in cases involving nonfatal injuries suffered by the parent. *See, e.g., Fla. Stat.Ann.* § 768.0415 (West 1988) (changing result reached by Supreme Court of Florida in *Zorzos v. Rosen, see supra* note 5); *see also* the dramshop statute involved in *Gail v. Clark*, 410 N.W.2d 662 (Iowa 1987), mentioned above at the outset of section II.A. of this opinion, and the wrongful death/wrongful injury statute involved in the Iowa case of *Audubon-Exira, see supra* note 5.

Most of the commentators strongly favor recognition of a parental consortium claim in a nonfatal injury case. *See, e.g.*, 1 H. Clark, *The*

*Law of Domestic Relations in the United States* § 12.6, at 689–92 (2d ed.1987); *Prosser and Keeton on the Law of Torts* § 125, at 935–36 (W. Keeton gen. ed. 5th ed.1984); Love, *Tortious Interference with the Parent–Child Relationship: Loss of an Injured Person's Society and Companionship*, 51 Ind.L.J. 590 (1976); Petrilli, *A Child's Right to Collect for Parental Consortium Where Parent Is Seriously Injured*, 26 J.Fam.L. 317 (1988); *see also* Bainbridge, *Loss of Consortium Between Parent and Child*, 71 A.B.A.J. 46 (Oct. 1985); Note, *The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent*, 56 B.U. L.Rev. 722 (1976); Casenote, *Tort Law—Minors Have Independent Cause of Action for Loss of Parental Consortium Resulting from Injuries Inflicted upon a Parent by Negligent Third Party*, 18 Cumb.L.Rev. 473 (1988) (discussing Alaska case of *Hibpshman*); Note, *Parental Consortium in Florida: Our Children Have No Place to Turn*, 13 Nova L.Rev. 295 (1988); Comment, *Loss of Parental Consortium: Why Children Should Be Compensated*, 18 Pac.L.J. 233 (1986).

tive resolution is wholly unpersuasive; such an argument ignores our responsibility to face a difficult legal question and accept judicial responsibility for a needed change in the common law. This Court has often met changing times and new social demands by expanding outmoded common law concepts.

... When confronted with these difficult and complex issues, this Court did not shirk its duty and retreat into the safe haven of deference to the legislature.... One of the principal purposes of the [common] law of torts is to compensate people for injuries they sustain as a result of the negligent conduct of others.

145 Vt. at 543–44, 496 A.2d at 945 (citations omitted). Virtually all of the other courts recognizing the claim at issue also *expressly* refused to defer to the legislature for substantially the same reasons.

Related to deferral to the legislature are two subsidiary arguments: lack of legal entitlement to parental consortium and the distinction between spousal and parental consortium. As to the former, we, like almost all of the courts recognizing the claim in question, believe the legislature has implicitly recognized legal entitlement to parental consortium in nonfatal injury cases by explicitly recognizing entitlement to parental consortium in wrongful death cases. "With a parent's death, the loss of consortium is permanent. With a parent's serious injury, the loss of consortium may be either temporary or permanent depending on the nature and extent of the [parent's] injury. We trust the factfinder to sort that out according to the evidence." *Nulle v. Gillette–Campbell County Joint Powers Fire Board*, 797 P.2d 1171, 1175 (Wyo.1990). Stated succinctly, "[w]e think it entirely appropriate to protect the [minor] child's reasonable expectation of parental society when the parent suffers negligent [, serious] injury rather than death." *Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 515–16, 413 N.E.2d 690, 695 (1980). *See also Ueland v. Pengo Hydra–Pull Corp.*, 103 Wash.2d 131, 134, 691 P.2d 190, 192 (1984) (en banc) (child's loss of love, care, companionship and guidance is nearly the same whether the parent dies or is seriously injured).

Another basis for recognizing legal entitlement to parental consortium is the similarity of such consortium to spousal consortium, which is already judicially recognized. While the element of sexual relations is present in spousal, but not in parental, consortium, we are not persuaded that this single distinction is significant enough to deny the minor child's claim. "Sexual relations are but one element of the spouse's consortium action. The other elements—love, companionship, affection, society, comfort, services and solace—are similar in both relationships and in each are deserving of protection." *Berger v. Weber*, 411 Mich. 1, 14, 303 N.W.2d 424, 426 (1981).

We also reject the third major reason for denying a claim of parental consortium in a nonfatal injury case, specifically, double recovery. The argument is that, as a practical matter, juries already award damages for loss or impairment of parental consortium in a nonfatal injury case as an undisclosed part of the *parent's* recovery of noneconomic damages. This argument, however, actually is support for open recognition of the minor child's action. The double recovery problem is easily eliminated by limiting the injured *parent's* recovery in this area to the loss or impairment of the parent's *pecuniary* ability to support the child; similarly, the *child's* cause of action would be limited to the loss of the parent's *society*, companionship and the like. *Theama*, 117 Wis.2d at 526, 344 N.W.2d at 522. Rather than having juries make blind calculations of the minor child's loss in determining an award to the parent, the minor child's loss would be argued openly in court and the jury would be instructed to consider the minor child's loss separately. *Berger*, 411 Mich. at 17, 303 N.W.2d at 427. Special verdicts should also be used.

Moreover, this same argument as to double recovery would apply also to spousal consortium (the physically injured spouse's award might include an undisclosed amount for the other spouse's consortium loss or impairment). As in a parental con-

sortium case, in a spousal consortium case the jury should be instructed as to the distinctive types of damages of the parties. We will assume that juries follow the court's instructions, including these instructions.

The fourth major reason for denying a parental consortium claim in a nonfatal injury case, namely, multiplicity of actions, is likewise unsound as a reason for totally denying such a claim. Virtually all of the courts recognizing this type of claim address this argument by requiring joinder of the minor children's parental consortium claims with the injured parent's claim, unless that is not feasible. We adopt this approach, too.[7]

Utilization of this procedural mechanism avoids the problem of exposing the tortfeasor to potentially numerous, delayed claims, that is, claims within two years after each of several minor children reach majority. *See W.Va. Code,* 55–2–15 [1931]. Utilization of this procedural mechanism also is equivalent to the manner in which wrongful death claims are brought. In wrongful death cases the decedent's personal representative brings the action. *W.Va. Code,* 55–7–6(a) [1989]. Multiplicity of actions is thereby avoided. Requiring joinder of the parental consortium claim(s) with the injured parent's claim accomplishes the same result of avoiding multiplicity of actions.

Fifth, we find unpersuasive the argument that the claim at issue should not be recognized because of the difficulty in assessing the amount of damages. A factfinder's calculation of damages for a minor child's loss of parental consortium is not any more difficult than the calculation necessary for indeterminate damages in other actions, such as for spousal consortium in a nonfatal injury case, spousal or parental consortium in a wrongful death case or for pain and suffering in a nonfatal injury case. As an adjunct to this argument, it

has been contended that monetary compensation will not enable the minor child to regain what was lost (the society, companionship and the like) when the parent was seriously injured. This Court agrees with the following response to that contention:

> Although a monetary award may be a poor substitute for the loss of a parent's society and companionship, it is the only workable way that our legal system has found to ease the injured party's tragic loss. We recognize this as a shortcoming of our society, yet we believe that allowing such an award is clearly preferable to completely denying recovery.

*Theama,* 117 Wis.2d at 523, 344 N.W.2d at 520.

Another reason advanced for denying recognition of a parental consortium claim in a nonfatal injury case is that recognition of such a claim would increase the liability insurance costs to society. We are unswayed by this assertion and concur with these comments:

> [P]roperly, the provision and cost of such [liability] insurance varies with potential liability under the law, not the law with the cost of insurance.
>
> ... No doubt there are genuine wrongs that courts are ill suited to set right, and others that do not merit the social costs of litigation. But if these costs are to be the reason for denying an otherwise meritorious cause of action, that is one judgment to be made by legislatures rather than by courts.

*Norwest v. Presbyterian Intercommunity Hospital,* 293 Or. 543, 552, 652 P.2d 318, 323 (1982) (refusing to recognize a parental consortium claim in a nonfatal injury case because such a claim involves indirect, emotional injury, which is normally not protected against at common law).

A seventh reason offered for opposing recognition of the claim in question is that each of the minor children likely would

---

7. We, like the other courts recognizing the claim in question, adopt this approach here as a fair and practical solution, not because Rule 19(a) of the *West Virginia Rules of Civil Procedure* would technically require such joinder. *Cf. Glover v.*

*Narick,* 184 W.Va. 381, 400 S.E.2d 816 (1990) (parent's action for consequential damages resulting from physical injuries to minor child need not be joined with minor child's action for physical injuries by virtue of Rule 19(a)).

attempt to magnify the quality of his or her relationship with the parent *vis-a-vis* the other minor children in order to enhance his or her own damage award. The same situation is present, however, in wrongful death actions. *See* syl., *Walker v. Walker*, 177 W.Va. 35, 350 S.E.2d 547 (1986) (trial court may consider type of relationship between decedent and his or her children in apportioning a wrongful death award).

Finally, there is the fear of exposure to liability to a potentially unlimited number of people who could claim and prove a loss or impairment of consortium because of the close relationship with the physically injured person. This fear is unfounded:

> In an era of ever-increasing caseloads in both the trial and appellate courts of this state, and where our society is being increasingly criticized for its propensity for litigation, the recognition of a new cause of action is not a step which we take lightly. However, it is the rights of the new class of plaintiffs, and the desire to see justice made available within our legal system, which are of paramount importance.

*Hay*, 145 Vt. at 539–40, 496 A.2d at 943. The "new class of plaintiffs" which we recognize here is *limited* to minor children, as well as physically or mentally handicapped children of any age who are dependent upon the injured parent physically, emotionally and financially. Because of the *crucial* role of the parent in these *vitally important* relationships, damages are almost certain to be inflicted when a tortfeasor interferes with these relationships by seriously injuring the parent physically.

We note that two state courts of last resort, namely, those in Arizona and Washington, *see supra* note 6, have allowed recovery of parental consortium damages by any adult child, as well as by a minor child, in a case involving nonfatal injury to the parent. There is some logic to that approach, in that adult children, too, may suffer a real loss when the parent-child relationship is disturbed by the tortious infliction of physical injuries upon the par-

ent. We note also that the West Virginia wrongful death statute allows recovery of parental consortium damages by adult, as well as by minor, children. Nevertheless, due to the very broad impact of extending this new common-law claim to all adult children, this Court at this time declines to follow the Arizona and Washington opinions in this regard.

In summary, this Court concludes that each of the above reasons offered for not recognizing a parental consortium claim in a nonfatal injury case is without merit. We particularly believe that the procedural concerns (double recovery, multiplicity of actions, etc.) should not bar recognition of this claim, for "[i]f existing procedures make it difficult to consolidate different claims for trial or to avoid overlapping recoveries for the same loss, the obvious answer is not to deny that there is a claim but to reform the procedures. Shortfalls in procedural reform do not justify shortchanging otherwise valid claims." *Norwest*, 293 Or. at 552–53, 652 P.2d at 323. We have outlined above the procedures to be utilized in this new type of action.

### D.

Having examined precedents elsewhere and having addressed the concerns related to recognition of a claim for parental consortium in a case involving nonfatal injuries sustained by the parent, this Court now turns to precedent within this jurisdiction. The parties have not cited, and our research has not disclosed, any opinion of this Court which decides the precise issue presented in this case. However, we are aware of language in the body of one opinion of the Court which, perhaps, suggests that the claim at issue is not recognized in this jurisdiction. *Wallace v. Wallace*, 155 W.Va. 569, 184 S.E.2d 327 (1971), involved an action by minor children against their father's second wife for alienation of the affections of their father. The Court, after noting a split of authorities on the point, held, in syllabus point 1 of *Wallace*, that "[a]t common law there is no right or cause of action in favor of a minor child against a third person for causing the alienation of affections of his [or her] parent[.]" Con-

tinuing in syllabus point 1 the Court stated: "[I]n the absence of a statute authorizing such action, no such cause of action exists in this jurisdiction. Such cause of action should be created, if at all, by statute and not by judicial decision." [8]

In the body of *Wallace* is this language: "[A]t common law there is no right or cause of action in favor of an infant child against a third person for *depriving* the child of the love, care and affection of his [or her] parent[.]" 155 W.Va. at 578–79, 184 S.E.2d at 332–33 (emphasis added). While this language is in the context of an action for alienation of affections, it may appear, in isolation, to be inconsistent with the recognition of a parental consortium claim against a third person. To the extent that *Wallace* is inconsistent with our holding herein, it is overruled.

■ A precedent of this Court which supports our recognition of a parental consortium claim in a nonfatal injury case is *Lee v. Comer*, 159 W.Va. 585, 224 S.E.2d 721 (1976) (abrogating parental immunity doctrine, thereby permitting an unemancipated minor child to maintain a negligence action against his or her parent). In syllabus point 1 of *Lee v. Comer* the Court held: "Unemancipated minors enjoy the same right to protection and legal redress for wrongs done them as others enjoy." Accordingly, the importance of a minor child to our society merits more than lip service, and we hereby remove the disability that the pertinent common law has imposed. *Berger*, 411 Mich. at 17, 303 N.W.2d at 427.

This decision is consistent with this Court's power, and duty, to evolve or to alter outdated common-law principles. *See, e.g.*, syl. pt. 2, *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979) (adopting a form of comparative negligence, in lieu of contributory negligence); syl. pt. 2, *Morningstar v. Black & Decker Manufacturing Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979) (fashioning strict product liability in tort).

### E.

Based upon all of the above, we state our holdings. First, "parental consortium" refers to the intangible benefits to a minor child arising from his or her relationship with such child's natural or adoptive parent. It includes society, companionship, comfort, guidance, kindly offices and advice of such parent and the protection, care and assistance provided by the parent. Consistent with the wrongful death statute, *W.Va.Code*, 55–7–6, as amended, parental consortium also includes sorrow and mental anguish concerning the impairment of the relationship.

■ Second, any minor child, or a physically or mentally handicapped child of any age who is dependent upon his or her natural or adoptive parent physically, emotionally and financially, may maintain a cause of action for loss or impairment of parental consortium, against a third person who seriously injures such child's parent, thereby severely damaging the parent-child relationship. To the extent that *Wallace v. Wallace*, 155 W.Va. 569, 184 S.E.2d 327 (1971), is inconsistent herewith, it is overruled.

---

8. Not only was there *no* statute *authorizing* an action for alienation of affections at the time *Wallace* was decided, there was a statute, *W.Va. Code*, 56–3–2a [1969], which expressly *proscribed* such an action. The Court upheld the constitutionality of that statute in syllabus point 4 of *Wallace.* This statute is still in effect.

*W.Va.Code*, 56–3–2a [1969] has no bearing on the question of whether this Court should recognize a parental consortium claim in a nonfatal injury case. First, we note that the statutory proscription of actions for alienation of affections has not been considered to be inconsistent with a child's right to recover consortium damages for the negligent death of a parent under the wrongful death statute nor with a spouse's right to recover consortium damages when the other spouse is negligently injured. Second, the proscription of the action for alienation of affections rests on different policy grounds. When a parent is enticed from the home, the value of the parental love and companionship is open to question. The alienation of affections action was grounded on the theory that an innocent spouse or parent has been intentionally enticed away from the home by a seductive intruder. The modern scenario is more likely to disclose a disappointed spouse who is as much the voluntary pursuer as the pursued. *Berger v. Weber*, 82 Mich.App. 199, 211, 267 N.W.2d 124, 129–30 (1978), *aff'd as modified*, 411 Mich. 1, 303 N.W.2d 424 (1981).

■ Third, in determining the amount of damages to award the minor or handicapped child, the relevant factors include, but are not limited to, such child's age, the nature of the child's relationship with the parent, the child's emotional and physical characteristics and whether other consortium-giving relationships are available to such child. *Villareal v. State Department of Transportation,* 160 Ariz. 474, 481–82, 774 P.2d 213, 220–21 (1989).

■ Fourth, a claim for parental consortium ordinarily must be joined with the injured parent's action against the alleged tortfeasor.

■ Fifth, when there is a parental consortium claim, the nonfatally injured parent is entitled to claim recovery for the loss or impairment of the parent's pecuniary ability to support the minor or handicapped child, while the minor or handicapped child is entitled to claim recovery for loss or impairment of those nonpecuniary elements constituting parental consortium.

■ Sixth, because a minor or handicapped child's claim for loss or impairment of parental consortium and the parent's claim for physical injuries are based upon the same conduct of the alleged tortfeasor, and because the child's claim is secondary to the parent's primary claim, any percentage of comparative contributory negligence attributable to the parent will reduce the amount of the child's recovery of parental consortium damages. *Villareal, see supra* note 6, 160 Ariz. at 481, 774 P.2d at 220; *Theama, see supra* note 6, 117 Wis.2d at 527, 344 N.W.2d at 522.[9]

■ Seventh, applying the factors set forth in syllabus point 5 of *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979), the principles of this opinion are fully retroactive, even to the very limited number of cases which are otherwise subject to this opinion and in which the parent's action for physical injuries has already been settled or finally adjudicated.[10] This case involves tort law, a traditionally unsettled area of the common law. While this opinion deals primarily with substantive, rather than procedural, law, a factor favoring retroactivity is that common law, rather than constitutional or statutory law, is at issue. In light of *Lee v. Comer's* broadly stated recognition of minors' rights in this state in 1976, this opinion is not a radical departure from previous substantive law. Finally, most of the courts recognizing the claim in question have made their holdings only partially retroactive, that is, only to the parties in the

9. We are aware of one opinion which holds that the parent's comparative contributory negligence is not imputed to the minor or handicapped child to reduce the amount of the parental consortium recovery. *Morgan v. Lalumiere,* 22 Mass.App.Ct. 262, 271, 493 N.E.2d 206, 212, *review denied,* 398 Mass. 1103, 497 N.E.2d 1096 (1986). This Court believes it is more sound to impute the primary tort victim's negligence to the related secondary tort victim.

We do not decide in this case whether a parental consortium claim comes within the "per accident" coverage limits of a liability insurance policy, as opposed to the "per person" coverage limits of that policy. *See generally* annotation, *Consortium Claim of Spouse, Parent or Child of Accident Victim as Within Extended "Per Accident" Coverage Rather than "Per Person" Coverage of Automobile Liability Policy,* 46 A.L.R. 4th 735 (1986 & Supp.1990).

10. Syllabus point 5 of *Bradley* states:

In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.

respective cases before them, but such action was taken without elaboration.

However, to prevent stale claims, a parental consortium claim may not in any event be maintained if the parent was injured more than two years prior to this opinion. Furthermore, to accommodate the usual requirement that a parental consortium claim be joined with the parent's action for physical injuries, a parental consortium action must be brought no later than thirty days after this opinion is filed, where the parent's action was brought prior to this opinion for injuries which were inflicted no more than two years prior to this opinion. *Cf. Beeck v. S.R. Smith Co.*, 359 N.W.2d 482 (Iowa 1984) (also recognizing interplay between retroactivity and statute of limitations).

We wish to point out that a minor or handicapped child's claim for loss or impairment of parental consortium is different from a claim for negligent infliction of emotional distress. Negligent infliction of emotional distress usually requires that the plaintiff witness a physical injury to a closely related person, suffer mental anguish that manifests itself as a physical injury and the plaintiff must be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant. *See Harless v. First National Bank*, 169 W.Va. 673, 689, 289 S.E.2d 692, 702 (1982). In contrast, a minor or handicapped child's claim for loss or impairment of parental consortium does not require that such child be within the zone of danger. Consortium claims are *sui generis*.

### III.

The third certified question, *see supra* section I., raises the issue of whether parental consortium includes the value of nursing, domestic or household services provided by a child to the injured parent. We hold that this item is not an element of parental consortium.

The courts recognizing a parental consortium claim in a nonfatal injury case do not include as an element of such consortium the value of these or any other services

provided by a child to the injured parent. Instead, the injured *parent* would be entitled to claim recovery of the value of such services provided by a child or by anyone else providing such services with or without charge. Thus, "parental consortium" does not include the value of nursing, domestic or household services provided by a minor or handicapped child to the injured parent.

### IV.

 The plaintiff here was not a minor or handicapped child at the time the cause of action accrued. Accordingly, having answered the certified questions, we remand this case with directions for the trial court to enter judgment for the defendant on this claim.

Certified questions answered; case remanded with directions.