661 So.2d 1131 (1995)
Catherine THOMPSON, Mother and Next Friend of Alex Thompson III, a Minor
v.
Robert T. LOVE and Delta Medical Center.
No. 92-CA-00201-SCT.
Supreme Court of Mississippi.
September 28, 1995.
William C. Walker, Jr., Oxford, Frank H. Shaw, Jr., Steele & Shaw, Kosciusko, for Appellant.
Richard O. Burson, L. Carl Hagwood, Campbell DeLong Hagwood & Wade, Greenville, Rachael Hetherington Lenoir, George Q. Evans, Wise Carter Child & Caraway, Jackson, for Appellee.
En Banc.
JAMES L. ROBERTS, Jr., Justice, for the Court:

INTRODUCTION
This case presents the Court with an important public and social policy issue of first impression for Mississippi concerning the ability of a minor child to recover for his loss of parental consortium from a third party tortfeasor who has injured his parent. Our national research discloses that the jurisdictions across the country appear to be divided on the cause of action with only a few jurisdictions, Mississippi included, which have not yet confronted the issue.[1]
*1132 While we do not hold that the cause of action is without merit, we do hold that the creation of such a cause of action could best be handled by the legislature's ability to enact the legislation if it so chooses. Therefore, constrained by the lack of statutory or case precedent in our jurisdiction and our reluctance to judicially create the cause of action, we defer the creation of the cause of action to the legislature. Accordingly, we affirm the lower court's grant of the defendants' motion for summary judgment since it was proper as the law existed in this state then and now.

STATEMENT OF THE CASE AND FACTS
On August 5, 1986, Alex Thompson (hereinafter Alex) sustained injuries in a fight and was admitted to the emergency room of Delta Medical Center for treatment. Alex was diagnosed as having a fractured mandible and was admitted as a patient to Delta Medical Center by Dr. Robert T. Love. Thereafter, Alex suffered from an upper airway obstruction from the injuries to his face, jaw, and neck which caused him to sustain hypoxic brain damage while under the care of the defendants. Alex Thompson III (hereinafter Alex III) asserts that his father will be permanently and totally disabled for the remainder of his life.
Thelma Parker, Alex's mother and the conservator of his person and estate, filed a medical malpractice action against Dr. Love and Delta Medical Center on July 11, 1988. The defendants denied any negligence on their part. The parties entered into a settlement agreement before the case went to trial. The settlement agreement provided, among other things: (1) $355,000.00 lump sum payment; (2) $4,500.00 per month for the life of Alex; and (3) $100.00 per month as child support for the life of Alex III, to continue until Alex III reached the age of twenty-two on June 11, 1988. Thelma and Alex's complaint was dismissed with prejudice on October 18, 1989.
Thelma Parker, as conservator of Alex's person and estate, executed a release and assignment with the settlement agreement. The terms of the settlement agreement and release provided that all possible claims by Alex and his estate were compensated, discharging and holding harmless the defendants from any further litigation from Alex or his estate regarding the alleged medical malpractice. On February 28, 1991, the Chancery Court of Washington County held that the agreement did not require the signatures of Alex III's mother or Alex III. The chancellor held the provision in the agreement whereby Alex III was to receive $100.00 a month until age twenty-two was a third-party beneficiary contract for his father's child support needs. Therefore, the provision was under Alex's rights and Alex III was merely an intended beneficiary, according to Chancellor Nathan P. Adams, Jr.
Thereafter, Cause No. 91-12,281(B) was filed in the Washington County Circuit Court on August 23, 1991, by Catherine Thompson, Alex's wife, on behalf of her minor son, Alex III. The complaint named Robert T. Love and Delta Medical Center as the defendants alleging their combined negligence as the direct and proximate cause of Alex III's loss of parental consortium. The complaint sought compensation for loss of parental consortium and the net cash value of his father's life.
The defendants filed a Motion To Dismiss or in the alternative for Summary Judgment on November 1, 1991, alleging Alex III's claim was not recognized in Mississippi and any such cause of action was previously settled under his father's settlement. Alex III responded on November 12, 1991, with Plaintiff's Response To Defendants' Motion To Dismiss or in the alternative For Summary Judgment, alleging Alex III's claim was not settled previously and was viable under Mississippi law. The defense filed a rebuttal motion alleging that Mississippi does not recognize such a cause of action, that Alex III's claim was previously settled, and to permit Alex III to recover would amount to double recovery.
On February 3, 1992, the Honorable Eugene Bogen granted the defendants' summary judgment motion finding that Mississippi *1133 does not recognize the minor's cause of action for loss of parental consortium. Finding that Mississippi has not yet recognized the claim by either statutory or case law, we affirm and defer to the legislature on this important issue of whether the state will permit such a recovery.

DISCUSSION OF ISSUES
The issue presented to the Court is a public and social policy question of first impression concerning tort liability in Mississippi. The issue stated succinctly is:
WHETHER MISSISSIPPI RECOGNIZES A CAUSE OF ACTION PERMITTING A CHILD TO RECOVER FOR LOSS OF PARENTAL CONSORTIUM WHEN THE PARENT IS INJURED BY A TORTFEASOR'S NEGLIGENCE LEAVING THE PARENT IN A PERMANENTLY AND TOTALLY DISABLED CONDITION, AND IF SO, WHETHER THE CHILD'S CAUSE OF ACTION INCLUDES DAMAGES FOR THE NET CASH VALUE OF THE PARENT'S LIFE EXPECTANCY?
As previously mentioned, we choose not to judicially create the cause of action and instead defer its creation to the legislature because of the nature and far reaching importance of the issue and lack of present authority in this state regarding such a cause of action.
The plaintiffs acknowledge the lack of Mississippi precedent and accordingly use the authority of other jurisdictions permitting such a claim. The primary case relied upon by Alex III is Williams v. Hook, 804 P.2d 1131 (Okl. 1990). Williams was a case of first impression presented to the Oklahoma Supreme Court on summary judgment which established that a "minor child may maintain a cause of action for the permanent loss of parental consortium through its guardian ad litem or next of friend when a parent is negligently injured by a third party." Id. at 1138. The facts of Williams and this case are very similar.
The minor's complaint for loss of parental consortium damages in Williams was dismissed for failure to state a claim because Oklahoma did not have either a statute or any case law concerning the claim. Her single mother was permanently and totally disabled from medical malpractice. The Williams court reserved judgment on the issue of liability but reversed the summary judgment and acknowledged the minor's loss and cause of action. We prefer to allow the legislature to address the creation of this cause of action instead of following the Williams court[2].
The defendants' most persuasive argument is that the issue presented is one of public and social policy which should be handled by the legislature instead of the Court. Concerns of the defendants in allowing the Court, instead of the legislature, to decide this issue include: (1) the possibility of increased litigation and multiple claims; See DeAngelis v. Lutheran Medical Center, 58 N.Y.2d 1053, 1055, 449 N.E.2d 406, 407, 462 N.Y.S.2d 626 (1983); Gray v. Suggs, 292 Ark. 19, 20, 728 S.W.2d 148 (1987); Borer v. American Airlines, Inc., 19 Cal.3d 441, 138 Cal. Rptr. 302, 563 P.2d 858, 860, 862 (1977). But also see contrary holdings on same concern permitting the claim in Reagan v. Vaughn, 804 S.W.2d 463, 466 (Tex. 1990); Berger v. Weber, 411 Mich. 1, 303 N.W.2d 424, 426 (1981); Nulle v. Gillette-Campbell County Joint Powers Fire Board, 797 P.2d 1171, 1176 (Wyo. 1990); Belcher v. Goins, 184 W. Va. 395, 401, 404, 400 S.E.2d 830, 836, 839 (1990); Hay v. Medical Center Hospital of Vermont, 145 Vt. 533, 540, 496 A.2d 939, 943 (1985); Steiner v. Bell Telephone Co. of Pennsylvania, 358 Pa.Super. 505, 512, 517 A.2d 1348, 1351 (1986); (2) inclusion of this type of claim would hinder and complicate the settlement of personal injury claims; See Gray v. Suggs, 292 Ark. 19, 20, 728 S.W.2d 148 (1987); Borer v. American Airlines, Inc., 19 Cal.3d 441, 138 Cal. Rptr. 302, 563 P.2d 858, 860, 862 (1977); (3) increased liability by a defendant tortfeasor resulting in higher insurance premiums borne by the public; Borer v. American Airlines, Inc., 19 Cal.3d 441, 138 Cal. Rptr. 302, 563 P.2d 858, 862 (1977); (4) difficulty in assessing damages to the child which in the defendants' words *1134 would "not compensate for the loss of the relationship with the parent", since the child could not spend it until the age of majority anyway; See Borer v. American Airlines, Inc., 19 Cal.3d 441, 138 Cal. Rptr. 302, 563 P.2d 858, 862 (1977); Lee v. Colorado Department of Health, 718 P.2d 221, 233 (Colo. 1986). But also see contrary holdings on same concern permitting the claim in Nulle v. Gillette-Campbell County Joint Powers Fire Board, 797 P.2d 1171, 1176 (Wyo. 1990); Villareal v. State, Dept. of Transportation, 160 Ariz. 474, 774 P.2d 213, 218 (1989); (5) emotional distress upon the child resulting from the additional necessary scrutiny into the child's relationship with the parent; See Dearborn Fabricating & Engineering Corp. v. Wickham, 551 N.E.2d 1135, 1137 (Ind. 1990); and (6) difficulty for a jury in distinguishing between the losses of the parent and that of the child which may result in a double recovery even if decided in one trial; See Lee v. Colorado Department of Health, 718 P.2d 221, 233 (Colo. 1986); Borer v. American Airlines, Inc., 19 Cal.3d 441, 138 Cal. Rptr. 302, 563 P.2d 858, 862 (1977). But also see contrary holdings on same concern permitting the claim in Nulle v. Gillette-Campbell County Joint Powers Fire Board, 797 P.2d 1171, 1176 (Wyo. 1990); Villareal v. State, Dept. of Transportation, 160 Ariz. 474, 774 P.2d 213, 218 (Ariz. 1989).
Additional logistical problems which the Court is alleged to be unable to handle, unlike the legislature, include: (1) longer statute of limitations problems; (2) compulsory joinder problems (remedied in Ueland v. Reynolds Metals Co., 103 Wash.2d 131, 691 P.2d 190, 195 (1984)); See Byrd v. Matthews, 571 So.2d 258, 261 (Miss. 1990) (wherein the Court encouraged, but did not require because the issue was not before the Court, plaintiff spouses to join their causes of action in order to avoid duplicative recovery and litigation) and (3) deciding who would be included under the cause of action (remedied in Belcher v. Goins, 184 W. Va. 395, 401, 404, 400 S.E.2d 830, 836, 839 (1990)) and the ability to locate them.
Although the jurisdictions across the country differ on allowing the claim, most permitting the claim do agree that the amount recoverable is limited to the child's loss of companionship and society in the form of emotional damages as opposed to economic damages which are for the injured party alone. Williams at 1135. This would inherently prohibit the recovery of the net cash value by a child for the loss of the parent's life expectancy.
The Oklahoma statutes, as are the Mississippi statutes, were silent at the time on the issue of loss of parental consortium when the parent does not die. The Oklahoma court felt there was no logical distinction for "allowing children to recover for the loss of consortium a child suffers through the actual death of a parent under 12 O.S. 1981 § 1053 (the Oklahoma Wrongful Death Statute) and refusing to allow recovery for loss of consortium when for all practical purposes the parent is in a state which equates death." Id. at 1136. Williams concluded by stating that "refusal to recognize the claim amounts to acknowledging an `immunity' for the tortfeasor  he/she may, with impunity, injure the child by depriving him/her of the love, society, care and protection of the parent." Id. at 1138.
The present state of the Mississippi Wrongful Death Statute, case law, and the absence of a statute regarding loss of parental consortium creates the exact anomaly confronted by the Oklahoma Supreme Court in Williams. See Miss. Code Ann. § 11-7-13 (Supp. 1994); McGowan v. Estate of Wright, 524 So.2d 308, 311 (Miss. 1988). Accordingly, the legislature may wish to address this issue and simultaneously address all concerns under the cause of action and efficiently and effectively establish the parameters of the cause of action. Therefore, the Court does not rule upon the merits of the issues in the present case and instead only rules upon the validity of the lower court's grant of summary judgment.

CONCLUSION
The issue before the Court is one of first impression and the nature of it is best resolved through a balancing of interests. On the one hand, there are the interests of a child who has been permanently deprived of the companionship, guidance and love of his *1135 parent because of his incapacity to meet these needs of the child. On the other hand, are the interests of judicial economy, the legislature, and the possible ramifications upon the public from recognition of the claim.
The essence of a loss of parental consortium claim is a public and social policy decision, and this Court finds that the legislature is in the best position to weigh the interests involved. Therefore, we leave it to the legislature, if it so chooses, to determine if the State of Mississippi will permit a minor child to recover for loss of parental consortium.
As for the case sub judice, the Court refrains from any ruling upon the liability of the defendants under these particular facts. Mississippi did not recognize a claim for loss of parental consortium when the trial court's decision for summary judgment was rendered and we do not now create it judicially. Therefore, the trial court's decision was proper as the law existed when the ruling was made and as of now since the legislature has not yet had an opportunity to address these concerns.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by SULLIVAN and BANKS, JJ.
McRAE, Justice, dissenting:
The majority winks at our Constitution where they now allow the wrongdoer with impunity to injure a child by depriving him of compensation for the love, protection, physical assistance and society of a parent. The primary foundations for recognizing this cause of action are clearly in place. We simply have never been presented with a minor child claim such as the present one. Instead, the majority chooses to defer the issue to the legislature. This Court was created for the purpose of making decisions, not avoiding them.
The Mississippi Constitution states that "every person for an injury done him ... shall have remedy by due course of law." MISS. CONST. of 1890, art. III, § 24. This Court, not the legislature, recognized as early as 1919 that a loss of consortium claim was a separate cause of action for personal injury. Brahan v. Meridian Light & Ry. Co., 121 Miss. 269, 83 So. 467 (1919). The Brahan Court concluded that there was no legitimate reason for giving the general negligence statute an "unduly narrow construction" where the plaintiff suffered a distinct and separate injury to his person through injury to his wife. Id. at 293-94, 83 So. 467. We have even abrogated interspousal immunity, allowing the husband and wife to sue each other for insurance benefits. Burns v. Burns, 518 So.2d 1205, 1209 (1988).
The spousal loss of consortium cause of action remains firmly embedded in the law of this state. Consequently, the majority's reason for deferring to the legislature is not persuasive. The public and social policy issues raised by these causes of action are, for the most part, indistinguishable. Double recovery would be avoided in a parental consortium claim, as in the spousal consortium claim, simply by restricting the categories of recoverable damages to either the child's claim or the parent's claim. The minor child's damages in a loss of consortium case would be limited to the loss of the parent's love, care, companionship, physical assistance and guidance. See Tribble v. Gregory, 288 So.2d 13, 17 (1974). The danger of double recovery is avoided simply by not permitting a plaintiff to recover the damages previously awarded to the injured parent.
This Court has certainly recognized the importance of the parent-child relationship in the context of the maintenance and support of a child. We have placed a continuing duty on both parents to provide for the support and maintenance of his or her children. The parental duty to support the child is a vested right of the child which can not be contracted away. Calton v. Calton, 485 So.2d 309, 310 (Miss. 1986). This requires both parents to provide for those things which are reasonably necessary to support the minor child. McLain v. West Side Bone and Joint Ctr., 656 So.2d 119, 122 (Miss. 1995). It is even a felony in this state for a parent who deserts or willfully refuses to provide for the support *1136 and maintenance of his or her children under the age of sixteen. Miss. Code Ann. § 97-5-3 (1994). The majority, however, remains willing to prevent a child from being awarded damages where the individual responsible for supporting the child is negligently injured by a third party.
Common law is a "dynamic concept whose rules arise from the application of reason to the changing conditions of society, and it is imbued with flexibility and capacity for growth and adaptation." Williams v. Hook, 804 P.2d 1131 (Okla. 1990). It is the duty of this Court to adopt the "fitter legal principle" where past precedents have established a "mischievous imperfection" in the law. Mitchell v. State, 179 Miss. 814, 176 So. 743, 745 (1937).
Under Mississippi's wrongful death statute, the legislature allows individuals with standing to sue under the statute to recover loss of companionship and guidance damages. Miss. Code Ann. § 11-7-13 (Supp. 1994). Because a child is one of the individuals with standing to institute the wrongful death cause of action after the death of a parent, he may recover damages for loss of companionship and guidance when he has suffered the death of a parent due to the negligence of another. Thomas v. Hilburn, 654 So.2d 898, 903 (Miss. 1995); McGowan v. Estate of Wright, 524 So.2d 308, 311 (Miss. 1988); Boyd Constr. Co. v. Bilbro, 210 So.2d 637, 643 (1968).
In the case at hand, the parent is permanently and totally disabled for the rest of his life. He is, in reality, dead as a parent to the child. Yet, the minor child must wait until the parent dies before he may recover loss of consortium damages, which would start upon the death of the parent. The years in between are simply lost. In other words, an injury without a redress. If the parent dies ten years after becoming totally disabled, the minor child loses compensation for the years that the parent lies unconscious. What is the sense in making a minor child wait for an extended number of years before loss of consortium damages can be recovered in a wrongful death action especially when the minor child loses compensation for those years that the parent was alive but, nonetheless, completely disabled? This Court can cure this imperfection in the law simply by recognizing the existence of the loss of parental consortium cause of action.
Loss of consortium damages in a wrongful death action originated from the language in the wrongful death statute which provides that the "parties suing shall recover such damages allowable by law as the jury may determine to be just." Miss. Code Ann. § 11-7-13 (Supp. 1994); See Illinois Central R.R. v. Fuller, 106 Miss. 65, 77, 63 So. 265 (1913) (concluding that identical language was "broad enough to include damages of every kind and nature."). The majority does not dispute the fact that it would be just to award the plaintiff damages for his loss of parental consortium in the present case where the parent is totally and permanently disabled.
Precedent demonstrates that this Court and the legislature have essentially recognized the claim which is before us today. The defendant, having provided the child a small monthly sum in the settlement of the parent's malpractice claim, has already recognized that there exists a cause of action for loss of parental consortium and that the minor child suffered his own distinct injuries. This Court simply has never been presented with a suit by a minor child for the loss of parental consortium. Allowing this cause of action would merely make the circle complete instead of passing the buck along.
If it is a multiplicity of actions which is feared, the majority could easily, with the facts of this case, limit recovery to the situation where the injury is so bad that the parent-child relationship is practically destroyed. See Villareal v. State, 160 Ariz. 474, 774 P.2d 213, 219 (1989) ("parent's mental or physical impairment must be so overwhelming and severe that the parent-child relationship is destroyed or nearly destroyed."); Keele v. St. Vincent Hosp. and Health Care Ctr., 258 Mont. 158, 852 P.2d 574, 577 (1993) (condition of parent must be such that parent-child relationship is nearly destroyed); Hay v. Medical Ctr. Hospital, 145 Vt. 533, 496 A.2d 939, 946 (1985) (child may sue for damages for loss of parental *1137 consortium where parent is permanently comatose).
In this day and age when lawmakers are focusing their attention on the breakdown of the family unit as the cause of many of society's ills, it is difficult to perceive the reason such a cause of action would not be recognized. The decision today turns away from society's emphasis on family values to say that, other than financial aid, a parent is of no value to a child. Certainly no one would agree with such a statement. An award of damages can not replace the lost parent, but it would aid the child in obtaining those things necessary to his or her development into normal adulthood. Forcing the minor child to wait until the parent is dead before he may recover consortium damages simply deprives the child of the award at a time during which it is needed most.
Our law already addresses the public and social policy issues raised by the loss of parental consortium cause of action. A recognition of this cause of action today would merely bring our law concerning the parent-child relationship into agreement with itself. The majority prohibits a minor child from recovering for his permanent loss of parental love, care, companionship and guidance when a parent is negligently injured by a third party. There is no logic in drawing this line, especially when it involves a child who, for all practical purposes, has suffered the complete loss of a parent. Since the majority's decision does not dispute the fact that a child has been injured by a third party whose negligence has deprived the child of the love, protection, physical assistance and society of a parent, the decision remains contrary to our Constitution which provides redress to anyone who suffers an injury. Because the facts of this case warrant the explanation that there exists the loss of parental consortium cause of action, I respectfully dissent.
SULLIVAN and BANKS, JJ., join this opinion.
NOTES
[1] Note the authorities cited under the Discussion of Issues. See also, Ferriter v. Daniel O'Connell's Sons, Inc., 381 Mass. 507, 413 N.E.2d 690, 11 A.L.R.4th 518 (1980); Still by Erlandson v. Baptist Hospital Inc., 755 S.W.2d 807 (Tenn. App. 1988).
[2] However, any subsequent legislative action will not affect this case.